MAX MINSKY, PLAINTIFF, v. MEYER SATENSTEIN AND GUSSIE SATENSTEIN, DEFENDANT.

For the plaintiff, *Samuel Harber.*

For the defendant, *Samuel L. Hirschberg.*

ACKERSON, S. C. C. The complaint in this action contains two counts. The first alleges malicious interference by the defendants with a contract to marry existing between the plaintiff and his fiancee, Bertha Satenstein, resulting in a breach thereof. No relationship between the defendants and said Bertha Satenstein is alleged however. The second

charges a malicious conspiracy between the defendants, who are alleged to be parents of plaintiff's fiancee, to bring about a breach of the aforesaid contract to marry actually resulting in a breach thereof.

The matter now comes before me upon a motion to strike out the complaint—first, upon the ground that the allegations of the complaint are not specific and precise, but are based upon conclusions of law, and, secondly, upon the ground that the complaint does not set forth a legal cause of action.

As already noted, the complaint charges the defendants with malice in procuring a breach of the contract to marry, and also with maliciously carrying out a conspiracy to cause a breach thereof. In setting forth the charges in the complaint, the plaintiff has resorted to general allegations, but it is definitely established in this state that:

"Where the gist of the action is malice, the general allegations of conspiracy, persuasion, threats, &c.; are good pleading." *Malone* v. *Brotherhood, &c.*, 110 *Atl. Rep.* 696; *Van Horn* v. *VanHorn*, 52 *N. J. L.* 284.

It is apparent, therefore, that the complaint should not be stricken out for the first reason urged by the defendants.

Turning now to the question of whether or not the complaint sets forth a good cause of action, we have to deal with the question of the liability of a third person for inducing the breach of a contract to marry, and this question is a novel one so far as the jurisprudence of this state is concerned.

In the early law, we find that the first recognition of a distinct cause of action for the interference by a third person with a contractual relationship arose in those cases where the third person interfered with the relation of master and servant. The recognition of a cause of action in such cases finally lead to the decisions in the cases of *Lumley* v. *Gye*, 2 *El. & B.* 216; 1 *Eng. Rul. Cas.* 706, and *Temperton* v. *Russell*, 1 *Q. B.* (1893) 715, in which it was definitely decided that the right of action for maliciously procuring a breach of contract is not confined to contracts for personal services but extends to other contracts as well, where the element of malice is present. The reluctant but gradual absorption of this doctrine into the jurisprudence of our state is clearly shown in

the case of *VanHorn* v. *VanHorn, supra,* where is was said that:

"Where there is a suable contract between a contractor and contractee, there is difficulty, in principle, in showing privity in another, or to make the person who procures a breach of the contract the proximate cause of injury. The party who breaks the contract, for whatever cause, whether by procurement of others or of his own volition, is primarily responsible to the other party; and the procurer, it would seem, can only be held responsible for the breach where there is malice shown to the sufferer, giving a distinct cause of action for the malice which caused the breach of the contract, resulting in damage to him."

While there has been a general expansion of the doctrine of the liability of a third person for interference with a contractual relationship, nevertheless the courts have apparently been reluctant to protect contracts to marry from malicious or fraudulent interference by third persons. This reluctance has been in part due to fear that the result of extending protection to such contracts would be to render parents liable for advising children in their parental capacity, where such advice might result in the breach of a contract to marry. Annotation to case of *Ableman* v. *Holman,* 47 *A. L. R.* (*Anno.*) 442. A contract to marry stands upon a different footing from the general commercial contract. In the former the state has an interest to see that the contract when consummated by marriage results in a union which will not only prove happy and lasting, but will fit well into the general social scheme. The protection of this interest of the state rests primarily with the parents of those contemplating marriage, therefore, it is generally recognized that parents have the right to advise their children whether they shall enter into contracts to marry, and also to advise the breach of such contracts already entered into, when in the judgment of the parents a marriage ought not to take place, and such advice or the result thereof is not actionable. *Leonard* v. *Whetstone,* 34 *Ind. App.* 383; 68 *N. E. Rep.* 197; 107 *A. S. R.* 252, and 15 *R. C. L.* 18. If the parents thus have the right to act, their motive in acting cannot, of itself, make the act wrongful.

15 *R. C. L.* 59, § 19. If any other rule were to be pronounced, it would be inviting litigation of a character which would do much to break down family discipline and control.

The case of *Leonard* v. *Whetstone, supra,* is directly in point. The complaint was based upon a charge that the parents of a young man who was engaged to marry had "conspired together to wrong the plaintiff, and to prevent the marriage by maliciously persuading, commanding and hiring their son not to marry the plaintiff, and to violate his marriage contract." The court in dealing with a motion to strike out the complaint as legally insufficient said, *inter alia:*

"We cannot hold other than that a parent has a perfect right to advise the child whether he or she shall enter into a contract of such importance as one of marriage. Nor should parents' advice be withheld from a child where an agreement to marry has been made, and in the judgment of the parents of either of the contracting parties the union ought not to take place.

"Judge Cooley, in his work on Torts, second edition, page 227, says: 'The prevention of a marriage by the interference of a third person cannot, in general, in itself, be a legal wrong. Thus if one, by solicitations, or by the arts of ridicule or otherwise, shall induce one to break off an existing contract of marriage, no action will lie for it, however contemptible and blamable may be the conduct.'

"But if a person is induced to refuse to comply with his agreement to marry by false and slanderous charges made against the other party to the agreement by a third person, the action is not against the third person for causing a breach of the contract, but for slander or libel, as the case might be."

If, therefore, a parent in an effort to break off an engagement stoops to libel or slander, the aggrieved party would have a remedy for the tort thus committed. Of course, a third party not standing in the relationship of parent to one of the contracting parties, is upon an entirely different footing, and any malicious interference with the contract by such party, would undoubtedly be actionable, but public policy as well as natural justice would seem to protect parents in their interference with a child's contract to marry, not prompted

by slander, libel or fraud. If this principle is correct, then it would make no difference whether parents conspired together to bring about a result which either might do separately.

As already stated, the question here considered is one of novel impression in this state, and we are, therefore, free to adopt that ruling which is best fitted to promote social welfare and conserve the best interests of the home and family relationships, and that rule undoubtedly is that parents have the right to advise their child against entering into a contract to marry and even persuading the child to break such a contract, and their reasons for so doing cannot be inquired into, leaving them liable, however, to an action for libel or slander if such means are used to accomplish that end. It is apparent, however, that the rule should not be extended beyond parents or those standing in *loco parentis* to one of the parties.

Of course, when once the marriage has been consummated, parents have no right to alienate the affection of one of the contracting parties from the other. But until the contract to marry culminates in matrimony, no such cause of action is recognized or exists. Annotation to case of *Ableman* v. *Holman, supra.*

Turning now to the complaint in the case *sub judice,* we find that the first count charges a malicious interference with a contract to marry, resulting in its breach, but nowhere in this count is it alleged that the defendants are the parents of the plaintiff's fiancee, hence, we may deem, for the purpose of this count, that the defendants stand in the position of third parties, who are not in a position to invoke the rule above adopted, therefore this count should stand.

The second count, however, does allege that the defendants are the parents of the plaintiff's fiancee and that they maliciously conspired to bring about a breach of the contract to marry, thereby setting forth a situation which falls within the protection of the rule above adopted, and, therefore, the second count should be stricken out as not setting forth a cause of action, and an order may be presented in accordance with the conclusions thus reached.