CHARLES MALONE, PLAINTIFF, v. BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN ET AL., DEFENDANTS.

Argued February 18, 1920—Decided June 5, 1920.

1. In an action for malicious conspiracy and malicious conduct causing the discharge of plaintiff from his employment, general allegations of conspiracy, persuasions, threat, &c., are good pleading.

2. The existence of a right, under the regulations of the national government affecting the operation of railroads by the director general, of appeal and ultimate restoration to the place from which plaintiff has been discharged, is no bar to asserting a common law right of action for damages against those alleged to have maliciously procured such discharge.

---

On motion to strike out complaint.

Before Justices SWAYZE and PARKER.

For the plaintiff, *Amos M. Waln.*

For the defendants, *Aaron V. Dawes.*

The opinion of the court was delivered by

PARKER, J. The defendants in this case are the Brotherhood of Locomotive Firemen and Enginemen, Local No. 253,

and certain individuals alleged in the complaint to be officers, agents and members of such local. The suit is generally on the lines of *Brennan* v. *United Hatters,* 73 *N. J. L.* 729, with certain differences hereafter to be noticed. The motion appears to be to strike out the entire complaint as insufficient in law; a motion which, of course, under our present practice amounts to a general demurrer at common law.

The gravamen of the complaint is that plaintiff was discharged from his employment and kept out of employment by acts of the defendants, or some of them individually, and also by a conspiracy between them, or some of them, to procure the discharge of plaintiff from his employment and to prevent his being re-employed. The first count of the complaint charges that the Local No. 253 was a voluntary unincorporated association; that the individual defendants were officers and members thereof; that on July 5th, 1917, plaintiff was employed by the Pennsylvania railroad as a hostler and foreman hostler of locomotives; that on or about that date the Pennsylvania railroad was taken over by the United States and the control of said railroad was vested in and exercised thereafter by the Director General of Railroads under whom plaintiff continued as an employe until May 20th, 1919; that the defendants, the organization and the individuals, well knowing the premises and contriving to injure the plaintiff on divers days in May, 1919, and prior thereto as far back as June, 1918, did unlawfully, maliciously, wantonly and without legal or justifiable cause or excuse willfully coerce, threaten, instigate, persuade, procure, entice and induce the director general of railroads, his officers, agents and servants to refuse to continue the said plaintiff in its said employment * * * and to discharge said plaintiff from said employment; by reason whereof the said director general of railroads, his officers, agents and servants, was compelled, coerced, instigated, persuaded, procured, enticed and induced as aforesaid, and did refuse to continue said plaintiff in employment and did terminate the relation of master and servant between them, which said director general or his subordinates would not otherwise have done, whereby plaintiff

has been deprived of his right to engage in such employment as he may choose free from hindrance or obstruction by others, &c., and has been deprived of large sums of money, claiming damages in $20,000.

The second count is substantially the same as the first count, except that it charges similar action as a result of a conspiracy between the defendants, or some of them, and acts in pursuance of said conspiracy of a similar nature whereby plaintiff was deprived of his employment as already set forth.

There are six other counts in the complaint which run in pairs similar to counts one and two, and the allegations need not, of course, be repeated.

Counts three and four rest upon an allegation of the employment of the plaintiff by one C. I. Leiper, superintendent of the New York division at the Morrisville roundhouse, and a discharge from that employment.

Counts five and six name F. J. Bushbaum, superintendent of the Morrisville roundhouse and his successor, Edward Braus, as his employer, with some allegations of individual interference and joint conspiracy.

Counts seven and eight make similar allegations with respect to employment under William Ott as master mechanic. These differences in names appear to be the only divergences from the allegations of the first and second counts.

The motion to strike out this complaint is based upon three stated grounds—*first,* that the complaint states conclusions of law as to coercion, persuasion, &c., and not facts from which such coercion, &c., may be inferred.

*Second,* that the court will not presume the president, director general and his subordinates were coerced or persuaded by any such alleged actions as those charged in the complaint.

*Third,* that the complaint states no cause of action. This, of course, need not be considered except as a general objection depending upon the first or the second ground or both of them.

With respect to the first ground that the declaration states merely conclusions of law, we are clear that it is not well

founded. The action is for malicious conspiracy and malicious conduct causing the discharge of plaintiff from employment. Its gist is the same as that of Brennan *v.* United Hatters, already cited, in which this line of cases is discussed and general allegations of the complaint were considered sufficient. In that case the declaration specifically counted on the withdrawal of a union card. But where the gist of the action is malice, general allegations of conspiracy, persuasion, threat, &c., are good pleading. See the leading case of *Van Horn* v. *Van Horn,* 52 *N. J. L.* 284, in which the substance of the declaration is printed. *S. C.,* 56 *Id.* 318, 324. In both reports of this case, it is assimilated to the old precedent in case for enticing away a servant. 2 *Chit. Pl.* 645. In the modern form, a complaint of this character is still more laconic. See *Bull. & L.* (*6th ed.*) 432, where the form reads as follows: "The plaintiff has suffered damage by the defendant on the (date) wrongfully enticing and procuring A. B. who was then in the service of the plaintiff as a (     ) to depart from the said service unlawfully and without the consent and against the will of the plaintiff, whereby," &c. In this aspect, the complaint is plainly good.

The second objection we deem to be frivolous. Naturally a court will not presume over a specific denial that the director general or his agents were coerced, intimidated, persuaded, &c., but this motion, which is a general demurrer, admits, for present purposes, that such was the case. It is urged that the plaintiff has, under the regulations of the national government affecting the operation of railroads by the director general, a complete remedy by appeal and ultimate restoration to the place from which he has been discharged; and the argument is that because plaintiff has this appeal, it is his duty, even as respects these defendants, to prosecute that appeal, and let them in the meantime, at least, go free of liability for the malicious conspiracy against him. We are unable to see that the existence of this right in the plaintiff is to bar him from asserting what we deem to be clear common law right of action for damages. We are not told by counsel what is to become of the plaintiff's wages that he may

have lost in the meantime nor are we advised why the defendants are to be exempt from suit while plaintiff strives for reinstatement. If they are exempt now, it would seem that they would be exempt in resisting the plaintiff's reinstatement at every step. Such a proposition shocks the most elementary sense of justice. As to the matter of the inviolability of the director general and other government officials from coercion, persuasion, deception, and so on, it seems idle to say that we must hold as against the admitted averments of the complaint, that these officials were not and could not legally be deceived or persuaded, and that this conclusive presumption must be entertained all the way down from the director general of railroads to the roundhouse foreman.

If the plaintiff had been removed from a public office, the case might be more difficult; but he had neither an office nor a position; it was a mere employment. As such, it was contractual in character. *Ross* v. *Freeholders of Hudson,* 90 *N. J. L.* 522, 526. And while it may be conceded for present purposes that it was terminable at the will of either himself or his superior, it had a contractual status with which the defendants illegally interfered, assuming, as we must assume, that the averments of the complaint are true. *George Jonas Glass Co.* v. *Glass Bottle Blowers' Association,* 77 *N. J. Eq.* 219, and cases cited.

Even conceding, which we do not concede, that the individual interference be not actionable, the conspiracy, and overt acts in pursuance thereof, are actionable. So, as the motion goes to the whole complaint and not to any particular count, it should, on elementary principles, be denied, if any count is good. *Perdicaris* v. *Trenton City Bridge Co.,* 29 *N. J. L.* 367; *Van Schoick* v. *Van Schoick,* 76 *Id.* 242.

In our view, however, the objections are not well taken to any count.

The motion to strike out is denied, with costs.