IN THE MATTER OF JOHN F. X. RIES, AN ATTORNEY
AND COUNSELOR.

Argued October 6, 1943—Decided May 18, 1944.

Before Justices PARKER and HEHER.

For the rule, *Robert K. Bell.*

*Contra, Louis B. LeDuc.*

The opinion of the court was delivered by

HEHER, J. On April 4th, 1929, an order was entered
suspending John F. X. Ries as an attorney and counselor of
this court. The action was founded upon a report made to
the court by the Grievance Committee of the Atlantic County
Bar Association, on March 23d, 1929, certifying that an
investigation of his professional conduct had revealed his
unfitness to practice law. Ries did not have notice of that
inquiry. He had then fled the jurisdiction; and his where-
abouts were unknown. On January 11th, 1927, the Grand

Jury presented to the Atlantic County Court of Oyer and Terminer an indictment charging him with perjury. A *nolle prosequi* was entered on June 3d, 1940, and in the latter part of the following November, he returned to the state. During all this time he was a fugitive from justice.

On February 5th, 1942, Ries filed a petition with this court setting forth his "explanation" of the subject-matter of the findings made by the local grievance committee, and praying the vacation of the order of suspension from practice. Thereupon, an order was entered directing that "the allegations and statements of fact" contained in the grievance committee's report "be considered as charges of unprofessional conduct," and that the committee's report and Ries' petition for reinstatement be referred to the Bar Examiners for "investigation, hearing and report to the court thereon, with recommendation." The examiners held a hearing on notice. The Board found that it had been proved "beyond reasonable doubt" that Ries was "guilty of illegal practice, attended with fraud and corruption, and committed against the obvious rules of justice and common honesty," and also of a "gross and palpable abuse of the process of the Court of Chancery." It recommended that his petition for a vacation of the suspension be denied, and that he be disbarred.

We concur in the findings of the Bar Examiners, and also in their conclusion that disbarment should be ordered. We are convinced that Ries undertook to acquire by fraudulent means the estate of an aged, illiterate, and mentally feeble client. The means employed to despoil the client of her property are outlined in the examiners' report, and need not be detailed here. It suffices to say that they reveal an evil and unconscionable design to interfere with the due course of legal process and to obstruct the administration of justice in the pursuit of the iniquitous scheme. *Vide In re Ries,* 101 *N. J. Eq.* 315. And Ries' explanation that his flight and concealment for upwards of thirteen years were for reasons of health is utterly incredible. It is clear that, at the time of his disappearance, he was aware of his indictment for perjury and was convinced that, at last, he would be compelled to answer for his perfidy and wrongdoing, and that

his long absence was motivated by the same considerations. His return shortly after the entry of the *nol. pros.* upon the indictment bears testimony to this. Just prior to his departure, and after his client had to his certain knowledge been adjudged a lunatic, he prepared and had her execute a codicil to her will, bequeathing and devising to himself one-half of her estate (the whole being of the value of $100,000), and appointing himself the sole executor of the will, without bond. She was then in Ocean View, Virginia, whither he had spirited her in an obvious but futile effort to oust the courts of this state of jurisdiction in the pending lunacy proceedings instituted by her daughter. He placed her in a cottage there, which he himself had rented under an assumed name. This was after the entry of a decree in Chancery voiding transfers made by his client to him of her entire estate. The indictment charged the commission of perjury in these proceedings. Immediately after the execution of the codicil, he made an assignment to his wife of such property as might come to him thereunder. About six weeks after his disappearance, the client died at Ocean View.

Apart from the gross fraud thus practiced upon his client, Ries' concealment of his whereabouts until the entry of the *nol. pros.* upon the indictment was palpably designed to obstruct the due course of justice, and so a fraud upon the court. He thereby demonstrated that, as in the case of his client, he was determined to defeat the ends of justice by such means as suited the occasion, however unlawful. It was obviously his purpose to remain in hiding until the indictment was no longer triable, whatever the reason. The proof of crime and of malpractice rarely remains intact over such a long period. Witnesses die and disappear, memory fails, and evidence is otherwise lost. Now, he cloaks himself in the white robe of innocence and seeks to place the onus of the fraudulent misconduct upon his deceased professional associate, Styron. It is vigorously urged that the "charges of misconduct were not proven to be such as justify either suspension or disbarment."

Flight itself, after indictment for felony and some misdemeanors, was an offense at common law. Its essence lay

in the endeavor to elude and stifle the due course of justice. It carried a forfeiture of the accused's goods and chattels, whether he was convicted or acquitted, if the jury found the flight: "for the very flight is an offense, carrying with it a strong presumption of guilt, and is at least an endeavor to elude and stifle the course of justice prescribed by the law." 4 *Bl. Comm.* 387.

Ries invokes "the fundamental principle of the common-law against double jeopardy." The argument is that he "has already been punished by this court's judgment of suspension," and "may not now be subjected to the greater punishment of disbarment for the same offenses." The "proposal so to punish him" is characterized as "extraordinary."

But the proceeding is not criminal in nature. It is an exercise of the summary disciplinary jurisdiction of this court over attorneys and counselors, as officers of the court. *Strong & Sons* v. *Mundy,* 52 *N. J. Eq.* 833. It is civil in character, or, perhaps, it is more accurate to say it is *sui generis,* for it partakes, essentially, of an inquiry to determine whether the delinquent practitioner is unworthy of the trust and confidence which attend the relationship of attorney and client. This is necessarily the basic consideration. The object of disciplinary proceedings is not alone to punish the attorney guilty of malpractice; the primary purposes are to compel the attorney to deal fairly and honestly with his client, and to determine whether he has, by his conduct, proved himself unfit to be entrusted with the duties and responsibilities of the office of attorney. *In re Lentz,* 65 *N. J. L.* 134. If it is thereby evident that there is such deficiency of character as disqualifies him.for the confidence and trust inherent in the office, the public interest requires that he be ousted; and this wholly apart from any consideration of punishment. To warrant disbarment, the misconduct must be gross, and. short of a crime, it is requisite that it reveal moral turpitude. Under the early rule in England, disbarment was deemed justifiable where the attorney had been fraudulently admitted, or convicted (after his admission) of felony, or other offense which rendered him "unfit to be continued as attorney," or knowingly suffered his name to be made use of by an unquali-

fied person, or acted as agent for such person, or signed a fictitious name to a demurrer, as and for the signature of a barrister, or "otherwise grossly misbehaved himself." *Tidd's Pr.* 89. The grounds for disbarment in this state have been stated thus: (1) conviction of crime; (2) commission of a crime, established by satisfactory evidence; and (3) intentional fraud upon the court or a client of a character evincing moral turpitude. *In re Cahill*, 66 *N. J. L.* 527. This court has inherent power to suspend or remove an attorney guilty of a willful perversion or obstruction of justice.

Plainly, Ries has been guilty of acts of malpractice involving moral turpitude. He has perpetrated frauds upon his client and the courts. His misconduct has been such, in moral quality, as to make it evident that he cannot safely be entrusted with the high responsibility of administering the law as an attorney and counselor, and therefore no merely punitive measure short of disbarment will suffice.

It is to be observed, also, that the suspension was not a final judgment, but a temporary expedient to meet the exigency arising from the attorney's flight and concealment.

Let Ries' name be struck off the roll of attorneys and the roll of counselors, of this court.