**FRENCH et al. v. UNITED STATES FIDELITY & GUARANTY CO. et al.**

Civ. No. 2302.

United States District Court
D. New Jersey.
Jan. 13, 1950.

John Warren, Jersey City, N. J. (Adrian M. Unger and Sam Denstman, Newark, N. J., of counsel), for plaintiffs, Samuel T. French, Samuel T. French, Jr., Charles F. Haus, John J. Grogan, Harry Smith, Ralph Smith and Allan Hubbs.

Walter S. Keown, Camden, N. J., for plaintiff, Timothy G. Middleton.

Pitney, Hardin, Ward & Brennan, Newark, N. J., William J. Brennan, Jr., Newark, N. J., for defendants, London & Lancashire Indemnity Co. of America and others.

Toner, Speakman & Crowley, Newark, N. J., G. Dixon Speakman, Newark, N. J., for defendants, American Motorists Ins. Co. and others.

O'Mara, Conway & Schumann, Jersey City, N. J., Edward J. O'Mara, Jersey City, N. J., for defendants, Accident & Casualty

Ins. Co. of Winterthur, Switzerland and others.

Edwards, Smith & Dawson, Jersey City, N. J., Allen C. Mathias, Jersey City, N. J., for defendant Security Mut. Casualty Co.

Thorn Lord, Newark, N. J., for defendant United States Fidelity & Guaranty Co.

Duggan, Shaw & Hughes, Newark, N. J., Edward L. Duggan, Newark, N. J., for defendants American Automobile Ins. Co. and Associated Indemnity Corporation.

FORMAN, District Judge.

These are motions by the defendants herein the general objectives of which are to dismiss certain counts of an amended and consolidated complaint, or in the alternative, to strike certain portions of the complaint and to compel more definite statement of its allegations or for a bill of particulars.[1] The plaintiffs for their part move to enjoin the defendants from pleading the statute of limitations.

The complaint, as amended and consolidated, is in eighteen counts. It alleges that the sixty-six defendant insurance companies[2] were or are members of the following unincorporated organizations: The Association of Casualty and Surety Companies, New York; National Bureau of Casualty and Surety Underwriters, now known as the National Bureau of Casualty Underwriters, of New York; and the American Mutual Alliance, of Chicago, Illinois.

Jurisdiction is founded upon diversity of citizenship and the amount in controversy exceeds $3,000, exclusive of interest and costs.

Count 1 further alleges that plaintiff, Samuel T. French, Senior (hereinafter called French, Sr.) has been a member of the bar of New Jersey since 1905, has maintained offices in the City of Camden, New Jersey, and that he developed a large and lucrative practice. That in and about the year 1934, the defendants conspired to cause him to be falsely indicted and convicted of crime; ruin him; disbar him; drive him from the practice of law; cause his clients to cancel retainers; cause prospective clients to refrain from retaining him; cause wrongful indictment of witnesses in legal actions of clients represented by him; cause such witnesses to refrain from testifying truthfully in such actions; induce such witnesses to swear falsely that they had testified untruthfully; injure his reputation; interfere with the administration of justice in the courts of New Jersey and of the United States; deny to his clients judgments to which they were entitled; falsely charge with crime lawyers employed by him, including his son, the plaintiff Samuel T. French, Jr. (hereinafter called French, Jr.); and otherwise impede, hinder, obstruct and defeat his advocacy of his clients' claims, with the intent to defeat and deny the constitutional and legal rights of him and his clients.

That in pursuance of the said scheme and conspiracy, defendants and their agents wilfully, maliciously, and without probable or justifiable cause committed the following acts: In 1934 organized the New Jersey Claim Investigation, a New Jersey corporation, as a shield to conceal the defendants from those injured by the conspiracy; bribed Thomas Morris and others, then employed by French, Sr., to act in a particular manner with respect to the professional business of French, Sr., and caused Morris to make a false affidavit and to testify falsely at the trial of the plaintiffs; caused Morris to be released from jail in the custody of one or more of the defendants, their agents, employees and attorneys and, by gifts, plying of liquor and the furnishing of a "lewd woman" induced Morris

1. An usual reply brief was filed by the firm of Duggan, Shaw & Hughes in chart form with an outline of the complaint, issues raised by the motion, plaintiffs' answers to the issues, and the replies of the defendants represented by them, all placed in parallel columns along with page references to the respective parties' briefs. In view of the complicated and almost endless considerations submitted by the parties, it was found to be of considerable usefulness in relating the arguments to each other.

2. The defendants are listed under their respective counsels' names at the head of this opinion.

to make a false affidavit and to testify falsely at the trial of the plaintiffs; illegally intimidated, falsely arrested, confined, and interrogated witnesses, including plaintiffs herein, to various suits instituted by French, Sr. "by arrogating the functions of the Prosecutor of the Pleas of Camden County, by inducing a County Prosecutor's detective to act as their agent and servant to illegally take said witnesses from their homes and beds, sometimes after midnight and at divers other times, and to bring them to a private hotel suite occupied by Herbert H. Hargraves, president of the New Jersey Claim Investigation, causing said witnesses to believe that said action was in all respects legal and proper and, under false color of authority, process and right, then and there to permit said Hargraves to interrogate said witnesses, under threats of prosecution, before a public stenographer and prosecutor's detective, in an attempt to have them make false affidavits concerning the plaintiffs", to testify falsely concerning the plaintiffs, and "to illegally afford said Hargraves free and easy access to said witnesses and to interrogate them while they were confined in the County Jail, and to further intimidate and coerce the said witnesses and attempt to injure Samuel T. French and the other plaintiffs herein by promising said witnesses freedom from criminal prosecution or their release from jail if they would make such false affidavits and give such false testimony"; induced Eugene Murphy, a witness on behalf of the plaintiffs in civil cases then the subject of inquiry, to make a false affidavit and to testify falsely at the trial of the plaintiffs; through the said Hargraves, attempted to influence the Grand Jury of Camden County in its vote on indictments of the plaintiffs; and on or about May 5, 1938, with intent to injure French, Sr. and French, Jr. in their profession and other plaintiffs in their businesses, falsely, maliciously, wilfully, wickedly and without probable cause, charged the plaintiffs before the said Grand Jury with a conspiracy to cheat and defraud certain parties by instituting actions at law for damages and charged certain witnesses with falsely testifying. As a result, an indictment was returned against the plaintiffs and others on May 6, 1938.

That pursuant to the scheme and conspiracy defendants illegally obtained copies of "rogues gallery" photographs of French, Sr. and French, Jr. and exhibited them to clients of French, Sr. Trial of the plaintiffs was held in April 1939 and after a three weeks' trial the jury was discharged having failed to agree. After the trial the defendants urged the Prosecutor of the Pleas to retry the plaintiffs on the indictment. On September 25, 1941, the indictment against the plaintiffs was nolle prossed.

That pursuant to the conspiracy and scheme of the defendants, they filed charges against French, Sr. and French, Jr. with the Ethics Committee of the Camden County Bar Association and participated in the prosecution of these charges. After conducting an investigation of the charges, the Bar Association on February 27, 1942, dismissed them.

That pursuant to the scheme and conspiracy, the defendants originated the charges resulting in the indictment and those filed with the Bar Association, and actively participated in the prosecution of them. As a result the plaintiffs suffered physically and in their reputations and French, Sr., and French, Jr. were damaged in their profession. In defending himself against all the acts of the defendants, French, Sr. expended $5,000 and in this action seeks damages to the sum of $1,005,-000.

Count 2 incorporates the allegations of Count 1 except for one paragraph and alleges that French, Jr. has been a member of the bar of New Jersey since 1935, that he had been employed by French, Sr. since then and that this plaintiff was damaged by the acts of the defendants for which he seeks damages totalling $1,000,000.

Count 3 incorporates portions of Count 1 and alleges that the aforesaid acts of the defendants resulted in the discharge of plaintiff Charles Haus from employment and that he was unable to secure re-employment "for a long time". This plaintiff seeks damages in the sum of $100,000.

Count 4 repeats the allegations of Count 3 and applies to plaintiff Timothy G. Middleton who seeks $300,000 damages.

Count 5 repeats the allegations of Count 3 and applies to plaintiff John Grogan who seeks $100,000 damages.

Count 6 repeats the allegations of Count 3 and applies to plaintiff Harry Smith who seeks $100,000 damages.

Count 7 repeats the allegations of Count 3 and applies to plaintiff Ralph Smith who seeks $100,000 damages.

Count 8 repeats the allegations of Count 3 and applies to plaintiff Allan Hubbs who seeks $300,000 damages.

Count 9 incorporates portions of Count 1. It further alleges that with intent to injure French, Sr. and French, Jr. in their profession and to injure the other plaintiffs herein the defendants charged the plaintiffs before the Camden County Grand Jury on May 5, 1938 with a criminal conspiracy to cheat certain persons by bringing false actions at law, and with having induced certain persons to swear falsely in the said actions, whereupon on May 6, 1938 an indictment was returned against the plaintiffs, the plaintiffs tried and the jury disagreed in April 1939. On September 25, 1941, the indictment was nolle prossed. The result of the defendants' actions was the injury to the plaintiffs' reputations, their physical sufferings, and French, Sr. and French, Jr. were injured in their profession. French, Sr. demanded $1,000,000 damages.

Count 10 incorporates portions of Count 1 and alleges that on January 10, 1939, the defendants with intent to injure French, Sr. and French, Jr. in their profession filed charges of unethical conduct against them with the Camden County Bar Association, that these charges were investigated, and that on February 27, 1942 they were dismissed. It alleges that the defendants originated and prosecuted these charges, the result of which was that the plaintiffs suffered physically and in their reputations, and that French, Sr. and French, Jr. were damaged in their profession. French, Sr. demands damages of $1,000,000.

Count 11 incorporates portions of Counts 1, 2 and 9, and charged that the defendants caused the criminal actions against French, Jr. who was damaged to the sum of $1,000,000.

Count 12 incorporates portions of Counts 1, 2 and 10 and alleges that the defendants brought about the disbarment proceedings against French, Jr. who seeks $1,000,000 damages.

Count 13 incorporates portions of Counts 1, 3 and 9 and alleges that the defendants brought about the criminal action against the plaintiff Haus who seeks $100,000 damages.

Count 14 repeats the allegations of Count 13 and applies to plaintiff Middleton who seeks $300,000 damages.

Count 15 repeats the allegations of Count 13 and applies to plaintiff Grogan who seeks $100,000 damages.

Count 16 repeats the allegations of Count 13 and applies to plaintiff Harry Smith who seeks $100,000 damages.

Count 17 repeats the allegations of Count 13 and applies to plaintiff Ralph Smith who seeks $100,000 damages.

Count 18 repeats the allegations of Count 13 and applies to plaintiff Allan Hubbs who seeks $300,000 damages.

The initial question to be determined is what causes of action are alleged in the complaint. The plaintiffs have argued on the basis that a conspiracy per se is actionable and that the acts performed pursuant to it are matters demonstrating how the conspiracy was accomplished. On the other hand, the defendants have argued that a civil conspiracy is neither a tort nor a cause of action but that the allegation of its existence is material merely as bearing upon the rules of evidence, as enhancing damages, or to bring within the ambit of liability some one who may have conspired but who did not actually participate in acts arising from the conspiracy. All parties are in agreement that malicious prosecution and malicious injury to business or malicious interference with business are the substantive wrongs attempted to be alleged in the complaint.

720

■ Since jurisdiction is based upon diversity of citizenship this court is in essence but another state court and controlled by the law enunciated by New Jersey courts. Therefore, except for procedural matters where Federal decisions control, it is necessary to pay attention to the New Jersey cases and decisions of the United States courts interpreting New Jersey law. Cf. Beneficial Industrial Loan Corp. v. Smith (Cohen v. Beneficial Industrial Loan Corp.), 337 U.S. 541, 69 S.Ct. 1221. See the same case in 3 Cir., 170 F.2d 44 and Guido v. Hudson Transit Lines, Inc., 3 Cir., 178 F.2d 740.

■ The law of civil conspiracy in New Jersey was early treated in the decision in Van Horn v. Van Horn, 52 N.J.L. 284, 20 A. 485, 10 L.R.A. 184; Id., 53 N.J.L. 514, 21 A. 1069, affirmed in 56 N.J.L. 318, 28 A. 669. In this case the rule was expressed that the "courts almost uniformly disregard the charge of conspiracy as an actionable element, and consider the malicious injury and resulting damage as the foundation and support of the action." The rule has been further interpreted in the case of Louis Kamm, Inc., v. Flink, 113 N.J.L. 582, 175 A. 62, 68, 99 A.L.R. 1, in the following manner by Mr. Justice Heher:

"The essence of the action, it seems, is not the conspiracy, but the damage done to the plaintiff. In an action on the case against several for a tort, though a conspiracy be charged in the complaint, one of the defendants may be convicted and the rest acquitted; the foundation of the action being the damage and not the conspiracy. To recover against all, a joint wrong must be shown, but if only one is shown to be concerned, the plaintiff may still recover against the one. The underlying principle is that the action is founded on the tort, and can, therefore, be sustained against one as well as against several for the damage resulting from the wrongful act. Upon no other theory, this court has held, can recovery be had against one alone, where conspiracy is alleged in an action against two or more, as two at least must participate to constitute conspiracy. The courts disregard the charge of conspiracy as an actionable element, and consider the malicious injury and the resulting damage as the foundation and support of the action. Conspiracy ordinarily is not the gist of the action, but is only matter of inducement or evidence. It is the rule in this state that, in an action charging conspiracy, a verdict may be rendered against one alone upon proof that he intentionally inflicted the injury through persuasion or by false presentations, instigated by malice. Van Horn v. Van Horn, supra.

"If conduct is complained of which only becomes actionable because of the dishonest combination to accomplish some wrongful act, this combination must be shown. And one cannot combine with himself; he must have associates. It is seldom, if ever, however, that a case can occur in which a man may not have redress without counting on the joint wrong; for the injury accomplished by means of the conspiracy may be treated as a distinct wrong in itself, irrespective of the steps that led to it. *The general rule is that a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action. The damage is the essence of the action, not the conspiracy; and though the conspiracy may be said to be of itself a thing amiss, it must nevertheless, until something has been accomplished in pursuance of it, be looked upon as a mere unfulfilled intention of several to do mischief.* [Cases cited].

\* \* \* \* \* \*

"The combination implies the intentional causing of loss or damage without justifiable cause. *While combination is not an essential element, it may serve to show the unlawful motive and purpose.*" 113 N.J.L. 592–593, 594, 175 A. 62, 69, 99 A.L.R. 1. [Underscoring supplied.]

It would appear, therefore, that the conspiracy is not the critical issue in determining the cause of action, but the acts done pursuant to the conspiracy.

■ To maintain a cause of action alleging malicious prosecution in a civil action the plaintiff must have "been arrested without cause and deprived of his liberty or made to suffer other special

grievance different from and superadded to the ordinary expense of his defense. See Potts v. Imlay, 4 N.J.L. 330, 335 (reprint pages 377, 382), 7 Am.Dec. 603; Bitz v. Meyer, 40 N.J.S. 252, 29 Am.Rep. 233." Schneider v. Mueller, 132 N.J.L. 163, 166, 39 A.2d 132, 134.

See also Hammill v. Mack International Motor Truck Corp., et al., 104 N.J.L. 551, 553, 141 A. 775; Pine et al. v. Okzewski et al., 112 N.J.L. 429, 170 A. 825; Saum v. Proudfit, 122 N.J.L. 96, 4 A.2d 35. The detention must be malicious but under due form of law, Pine et al. v. Okzewski et al., supra, 112 N.J.L. at page 432, 170 A. 825. The principal elements in addition must be that the prosecution is ended, that there was a want of probable cause and that it resulted from the acts of a defendant, actuated by malice. Baldwin v. Point Pleasant Beach & Surf Club, 3 N.J.Super. 284, 286, 66 A.2d 62; Miller v. Lai, 77 N.J.L. 135, 71 A. 63; Potter v. Casterline, 41 N.J.L. 22; Weisner v. Hansen, 81 N.J.L. 601, 80 A. 455.

Detention is unnecessary, however, where the prosecution is criminal, Hammill v. Mack International Motor Truck Corp., et al., supra, 104 N.J.L. at page 553, 141 A. 775. The withdrawal of the complaint, Hammill v. Mack International Truck Corp., et al., supra, 104 N.J. L. at page 553, 141 A. 775, or the judgment of acquittal or nolle prosequi, Apgar v. Woolston, 43 N.J.L. 57, 64; Stein v. Schmitz, 137 N.J.L. 725, 727, 61 A.2d 260, terminates a criminal prosecution.

The action of malicious interference with business or malicious injury to business is based upon the interference with the right to pursue a lawful business, calling or occupation free from undue interference or molestation. Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 175 A. 62, 99 A. L.R. 1. As the court therein stated:

"Any act or omission which unjustifiably disturbs or impedes the enjoyment of such right constitutes its wrongful invasion, and is properly treated as tortious." 113 N.J. L. at page 586, 175 A. at page 66, 99 A.L. R. 1.

"The courts look through the instrumentality or means employed to the wrong perpetrated with malicious intent, and provides the remedy to redress that wrong." 113 N. J.L. at page 588, 175 A. at page 66, 99 A. L.R. 1.

"If the challenged action were taken for the indirect purpose of doing injury to appellant, or of benefiting respondents at the former's expense, it is a wrongful act, unless done in the exercise of an equal or superior right, and therefore a malicious act, and actionable." 113 N.J.L. at pages 588, 589, 175 A. at page 67, 99 A.L.R. 1.

Thus it is a tort where there is alleged that there was malicious conduct pursuant to a conspiracy which caused the discharge of a person from employment, Malone v. Brotherhood of Locomotive Firemen & Enginemen, 94 N.J.L. 347, 110 A. 696, or where the allegation sets forth malicious initiation of disciplinary proceedings against a member of the bar, Stein v. Schmitz, 32 A.2d 844, 21 N.J.Misc. 218. Cf. Stein v. Schmitz, supra. The gravamen appears to be a malicious effort to injure or interfere with a person in his business, profession, or calling. Cf. Note, 3 Rutgers Law Review 277 (1949) Intentional Interference with Business Relations.

With the New Jersey law in mind an examination of the complaint and certain of the attacks of the defendants upon it discloses that Count 1 alleges the tort of malicious injury to or interference with the business and profession of French, Sr. The totality of the allegations therein appear to be aimed at redressing the alleged harm done to French, Sr. in his professional reputation. Indeed, this is the view adopted by the defendants in their briefs.

Count 2 is claimed by the defendants not to state a cause of action upon which relief can be granted. They assert that nowhere is it alleged that the defendants committed the wrongful acts with the intent to injure French, Jr. The argument is premised on the proposition that it appears from the allegations of the count that French, Jr. was employed by French, Sr. and that employees do not have a cause of action for injuries to the business of their employers. It is immaterial whether he is employed by French, Sr. or

any other person for he seeks to vindicate an alleged wrong done him in his professional capacity. The count alleges in essence that in committing the acts which injured French, Sr. the defendants injured French, Jr. in his professional status as a lawyer. The defendants have argued that nowhere is it alleged that the same acts set forth in Count 1 were done pursuant to a scheme to ruin French, Jr., but paragraph 7(g) of Count 1 states that the defendants: "on or about the 5th day of May, 1938, wilfully, wickedly and maliciously contriving to injure the plaintiffs, Samuel T. French and Samuel T. French, Jr. in their profession, * * *" charged the plaintiffs with wrongful acts before the Grand Jury. Paragraph 8 states that the Grand Jury returned an indictment against the "plaintiffs herein". Paragraph 9 states that the defendants secured and circulated the "rogues gallery pictures" of Samuel T. French and Samuel T. French, Jr. and that all had been done "in pursuance of said scheme and conspiracy set forth". All paragraphs in Count 1 are incorporated by reference in Count 2. There appears to be no substance to the motion of the defendants as to Count 2 and their motion on this score will be denied.

Defendants attack Counts 3 through 8 inclusive on the ground that there is wanting any allegation as to the nature of the employment or business of the plaintiffs and that if they are employees of French, Sr. they would have no cause of action for injuries to him. They allege that nowhere in the complaint is there an allegation that the defendants committed wrongful acts with intent to injure the plaintiffs specified in Counts 3 through 8 inclusive. The plaintiffs argue that paragraphs 7(g) and 18 of Count 1 specifically set forth allegations of intent to injure all plaintiffs and that conceding that the defendants only intended to injure French, Sr. the damage to the other plaintiffs was a foreseeable consequence of their actions. However, the defendants have replied that the doctrine of foreseeable consequence has no application since it is a negligence doctrine. They further claim

that paragraph 6 of Count 1 alleges the purpose of the action and conspiracy was to harm and injure French, Sr., hence there is alleged no intent to injure any one except French, Sr. in the conspiracy. The non-lawyer plaintiffs have incorporated in Counts 3 through 8 inclusive many of the allegations of Count 1, but it is true that it is not directly alleged that the purpose of the conspiracy was to harm them. The major conspiracy was alleged to have been aimed at French, Sr. In order to accomplish it they allege that acts of the defendants resulted in the harm to them. Thus paragraph 7 alleges facts to show that in carrying out the conspiracy against French, Sr. the defendants did intend to injure the other plaintiffs. There is a sufficiency in Counts 3 through 8 to allege a scheme and conspiracy wherein the defendants thereby intended to harm other plaintiffs. The gravamen of the counts is not discharge from employment because of interference with their employer's business, but discharge because acts of the defendants brought the plaintiffs into ill repute and rendered them unemployable for a long time. Where and by whom the plaintiffs were employed when discharged is immaterial at this stage and may be discovered through employment of pre-trial discovery processes. Therefore these objections of the defendants to Counts 3 through 8 will be denied.

Count 9 was claimed by the defendants to be redundant of Count 1, but both allege different torts. As Count 1 is viewed it charges malicious interference with the business of French, Sr. pursuant to a conspiracy. Count 9 charges malicious prosecution of French, Sr. pursuant to a conspiracy. Therefore different torts are alleged and the objections of the defendants that Count 9 is redundant of Count 1 cannot be sustained.

In Count 10, the complaint appears to be framed to charge either malicious prosecution of disbarment proceedings against French, Sr. or malicious interference with or injury to the business of the plaintiff. If it charges malicious prosecution of disbarment proceedings, assuming such to be a cause of action, then it is

founded upon a malicious prosecution of a civil action and it is fatally defective for it fails to allege any form of detention or superadded grievances. Schneider v. Mueller, supra; Hammill v. Mack International Motor Truck Corp., supra. If it charges malicious interference with or injury to the business of the plaintiff, then it is duplicitous of the first count and therefore redundant. Accordingly the defendants' motion to strike Count 10 will be granted.

Count 11 is identical with Count 9 except that it has reference to French, Jr. For the same reason stated in the preceding disposition of defendants' objections to Count 9, their objections to Count 11 as being redundant of Count 2 must be denied.

Count 12 alleging malicious prosecution in bringing disbarment proceedings against French, Jr. is subject to the same invalidity as Count 10 with regard to French, Sr. Therefore defendants' objection to Count 12 will be granted and Count 12 like Count 10 will be stricken.

Defendants object that Counts 13 through 18 alleging malicious prosecution of plaintiffs other than French, Sr. and French, Jr. are redundant of Counts 3 through 8 against them and should be stricken from the complaint. Counts 3 through 8 have been held herein to charge malicious interference with employment pursuant to a conspiracy upon the part of the defendants. This is a separate and distinct tort from that charged in Counts 13 through 18.

Therefore the latter counts will not be stricken.

We now come to a consideration of the defense of the statute of limitations. It is urged by the defendants in their motion to strike Counts 1 through 8 and Counts 10 and 12 of the complaint. The issue is also raised negatively by the plaintiffs in their motion to restrain the defendants from utilizing the statute as a defense to the action at all. The plaintiffs further urge, in the event their latter motion fails, that defendants acted prematurely in presenting their defense by way of motion to strike the counts from the complaint but should have pleaded the statute of limitations as a defense by way of answer.

Since it has been indicated that Counts 10 and 12 will be stricken they are no longer in issue.

The parties do not controvert the point that the action as laid in Counts 1 through 8 is controlled by the New Jersey statute which sets six years as the limitation of time in which to institute such an action. N.J.S.A. 2:24–1.

The motion of the plaintiffs to restrain the defendants from resorting to the defense of the statute at all will receive first consideration. The motion was accompanied by the affidavit of one of the attorneys of the plaintiffs in which he averred that he was substituted as counsel for the plaintiffs in August of 1947 and that examination of the official records of the State of New Jersey failed to disclose the participation of the defendants herein in the corporate activities of the New Jersey Claim Investigation. However, depositions taken on September 3, 1947 revealed the connection whereupon the amended complaint was filed which added defendants and counts to the complaint as filed in 1942. He further stated that Samuel T. French, Sr. was counsel for all plaintiffs except Timothy G. Middleton and that Samuel T. French, Jr. informed him that the plaintiffs had no knowledge of who was responsible for and controlled New Jersey Claim Investigation.

Recently it was stated in Zimmerman v. Chervitch, 5 N.J.Super. 590, at page 593, 68 A.2d 577, at page 578 that: "The rule is generally established that mere ignorance of the existence of a cause of action or of the facts which constitute a cause of action will not prevent the running of a statute of limitations or postpone the commencement of a period of limitation. 54 C.J.S., Limitations of Actions, § 205; 34 Am.Jur., Limitation of Actions, sec. 230. This rule is given recognition in Weinstein v. Blanchard, 109 N.J.L. 332, 162 A. 601, and the cases and authorities cited therein."

The court further held that where there is a fraudulent concealment of a cause of

action, or where the gist of an action is fraud which is concealed from a plaintiff, the period of limitations will not commence until discovery of the wrong or of facts which reasonably put one on inquiry. Cf. Hawkins v. Public Service Co-ordinated Transport, 137 N.J.Eq. 183, 44 A.2d 35; La Porte v. United States Radium Corporation, D.C., 13 F.Supp. 263.

 No facts have been stated in the affidavit of the plaintiffs that demonstrate equitable grounds for the restraint of a plea of the statute of limitations. There is nothing alleged that could not be determined by the employment of pre-trial discovery procedures. The original action was filed in 1942 by French, Sr. against United States Fidelity and Guaranty Company. Depositions prior to the amendment of the complaint revealed the parties alleged to have been jointly engaged with United States Fidelity and Guaranty Company. No controlling reason has been shown why this procedure was not employed when the action was originally commenced. The plaintiffs, French, Sr. and French, Jr. stated that they were experiencing difficulty in obtaining trial counsel but this has nothing to do with explaining why in a five year period there could not have been determined the facts now alleged in the amended complaint. The plaintiffs' motion to restrain temporarily the plea of the statute of limitations and their application for an order to show cause why defendants should not be restrained from permanently asserting it will be denied.

 Next for consideration is the proposition by the plaintiffs that the defendants may not raise this defense by motion but must plead it by way of answer to the complaint. The plaintiffs submit that the rule in the courts of New Jersey prohibits the implementation of the statute of limitations by way of motion and requires that it be affirmatively pleaded by way of answer. They claim that if this rule of New Jersey state practice is ignored in favor of the defendants' contention, a result would follow which will be substantially dissimilar to the result that would follow in the state courts, contrary to the intent of Erie R. R. Co. v. Tompkins, 304 U.S.

64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, with substantial prejudice to the plaintiffs. They further argue that by alleged unconscionable affirmative acts of the defendants, i. e., formation of the New Jersey Claim Investigation and concealment of its real purpose and the identity of the parties thereto, the defendants are estopped to advance the bar of the statute of limitations. Therefore they claim that the complaint presents issues of facts which require that the statute must be pleaded by answer, citing 1 Moore's Federal Practice (1938 Ed.) Supplement (1947) at pages 267 et seq., and La Porta v. United States Radium Corporation, D.C., 13 F.Supp. 263.

There appears to be no merit to the plaintiffs' contention that deference must be given to state procedure. The rules of procedure governing the Federal District Courts have been established by the Supreme Court of the United States pursuant to Acts of Congress, 28 U.S.C.A. §§ 2071, 2072, see Reviser's Notes, Title 28, 1948 Congressional Service, Special Pamphlet, pp. 1895–1897, wherein the source of the 1948 revision of 28 U.S.C.A. is set forth. In determining how a defense may be raised in a federal district court, the Federal Rules of Civil Procedure not the rules of a state court are controlling.

The rule appears to be that a motion is proper. See 3 Federal Rules Service, Commentary, pp. 671–673. At the period when the Commentary, supra, was published case law on the subject had not been developed. But decisional law since that date has clearly established the right to raise the bar of the statute of limitations by motion.

The Third Circuit has indicated approval of this view in Continental Colleries, Inc. v. Shober, 130 F.2d 631, 635, wherein it stated: "While most defenses are to be pleaded affirmatively under the Federal Rules, Rule 12(b) (6) provides that the defense may take the form of a motion to dismiss for 'failure to state a claim upon which relief can be granted'. As observed in Leimer v. State Mut. Life Assur. Co., 8 Cir., 108 F.2d 302, 305, 306, 'Such a motion, of course, serves a useful purpose where, for instance, a complaint states a claim based upon a wrong for which there

is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted to him, *or a claim which the averments of the complaint show conclusively to be barred by limitations.'"* (Italics supplied.)

The Continental Colleries case was cited with approval in the case of Bricston v. Woodbrough, 8 Cir., 164 F.2d 107. Cf. Stanley v. Bird, D.C., 85 F.Supp. 358. In Panhandle Eastern Pipe Line Co. v. Parish, 168 F.2d 238, 240, the Court of Appeals for the Tenth Circuit held that: "Federal Rules of Civil Procedure, rule 9(f), 28 U.S.C.A. following section 723c, provides that for the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like other averments of material matter. Under that rule, where it affirmatively appears from the face of a complaint that the action pleaded is barred by the statute of limitations, the defense can be raised by motion to dismiss. Gossard v. Gossard, 10 Cir., 149 F.2d 111."

It becomes necessary to determine whether the complaint on its face affirmatively discloses that the action is barred by the statute. In the summary of the complaint heretofore made the alleged activities of the defendant date back to 1934 and no act is alleged to have been committed by them directly, after 1939. The amended complaint as consolidated was filed September 22, 1947. From the face of the complaint, itself, it does appear that more than six years elapsed between any act actually alleged to have been committed by the defendants in the counts of the complaint in question and the time of filing the complaint. Hence the motion may be considered at this time.

Notwithstanding that the complaint on its face alleges dates of activities by the defendants which permit the motion the question is raised whether there is merit to the motion.

It is the established rule that no cause of action alleging malicious prosecution arises until termination of the prosecution complained of. The controlling principles are enunciated in Apgar v. Woolston, 43 N.J.L. 57, at page 59, as follows: "The doctrine that no action can be brought by an individual who has been subjected to a criminal prosecution, against the person who sets it on foot, while the prosecution is pending, is founded upon the most urgent consideration of public policy. It is not consistent with public policy unreasonably to discourage criminal prosecutions at the instance of private individuals. If the prosecution results in a conviction of the accused, he can maintain no action against his prosecutor, though he may be able to show, in his civil suit, that the complainant, in preferring the charge, was actuated by motives of intense malignity, and that he had no reasonable ground, at the time he made the complaint, to suspect or believe that the accused was guilty. Considerations of public policy also debar the accused from any action while the prosecution is pending, in which the motives of the complainant in preferring the complaint may be put in issue. If a complainant may be subjected to the harassment of an action while the criminal prosecution is pending, prudent persons would be deterred from ever becoming complainants. When the criminal prosecution is ended, if it terminates in favor of the accused, and the public no longer have any interest in its prosecution, the accused may then maintain his action against the complainant. Any action before the criminal prosecution is terminated, is prematurely brought. After it is terminated, the accused, if it has resulted in his favor, may sue; and the gravamen of his suit then will be that the prosecution was instigated maliciously, and without reasonable or probable grounds. Except to confer on the accused the capacity to sue, the manner in which the prosecution terminated is irrelevant."

See also Lowe v. Wartman, 47 N.J.L. 413, 1 A. 489. Applied to the case herein, the plaintiffs were prohibited from bringing a malicious prosecution action prior to the entry of the nolle prosequi on September 25, 1941.

The very acts alleged to have interfered with professions or employment of the plaintiffs are claimed to have com-

menced in 1934 and continued through to the termination of the criminal prosecution. The argument of the defendants has been reasoned upon the promise that, assuming their alleged activities were actionable at all, they began in 1934 and culminated with the trial in 1939 and that this marked the critical date when the statute of limitations began to run in their favor. But this argument overlooks the principle set forth in the Apgar case that the public interest in the criminal prosecution does not cease until its termination and until then the alleged injured party is not free to seek redress. The trial in April 1939 brought about no definitive termination of the criminal proceedings for, so the plaintiffs allege, it ended in the discharge of the jury for disagreement. It was not until September 25, 1941, when the nolle prosequi was entered that the criminal proceedings against the plaintiffs came to a definitive termination. The public interest alluded to in the Apgar case was not satisfied until that date.

The lawyer and non-lawyer plaintiffs charged in effect that they were affected alike by the joint activities of the defendants in setting in motion against them criminal proceedings which interfered with their professions and employment. Under such a charge the damage to these plaintiffs was a continuing process until there was a termination of the criminal proceedings brought against them.

Under the practice in New Jersey in force at the time of the alleged Bar Association probe of French, Sr. and French, Jr., a county bar association, after recognition by the Supreme Court of New Jersey, was authorized through its ethics committee to inquire into the conduct of a member of the bar practicing in the particular county. It was also authorized to petition the Supreme Court to discipline such members after due investigation and could secure assistance from the Supreme court in compelling testimony from a recalcitrant witness. In re Bar Association of Hudson County, 109 N.J.L. 275, 160 A. 809.

The practice of law is one inherently charged with a high degree of public confidence and it has been the historic duty and function of the bench and bar to police the conduct of its members. See cases cited In re Hahn, 85 N.J.Eq. 510, 96 A. 589, Ann.Cas.1918B, 830. Transgressions of the code of ethics governing the profession of law may lead to permanent disbarment, suspension from practice, reprimand or other such disciplinary action. In re Hudson County Bar Association, supra; In re Mary Rhodes, 100 N.J.Eq. 370, 136 A. 408; In re Ries, 101 N.J.Eq. 315, 138 A. 586; In re Ries, 131 N.J.L. 559, 37 A.2d 417; In re Stein, 1 N.J. 228, 233, 62 A.2d 801; In re Wesler, 1 N.J. 573, 64 A.2d 880; In re Lieb, 1 N.J. 567, 64 A.2d 880.

In the case sub judice, although there is no allegation that the procedure of filing a petition with the Supreme Court of New Jersey was followed as is provided in R.S. 2:23–4, N.J.S.A., Cf. Stein v. Schmitz, 137 N.J.L. 725, 61 A.2d 260; Id., 32 A.2d 844, 21 N.J.Misc. 218, the Ethics Committee is alleged to have commenced an investigation at the instigation of the defendants who participated in one form or another. Great injury may result to one investigated by a bar association where no probable cause exists or for unjustifiable reasons. The injury must, of course be proven. Stein v. Schmitz, supra. The same considerations governing a criminal prosecution would appear to govern disbarment proceedings or investigation into charges of professional misconduct by a bar association. It was only natural for the Camden County Bar Association Ethics Committee to withhold its judgment pending the action of the State against the plaintiffs French, Sr. and French, Jr. A few months after the State acted in dismissing the criminal proceedings the Bar Association rendered its decision that the complaint against them was without foundation. Cf. Anonymous, 7 N.J.L. 162; In re Noonan and Simpson, 65 N.J.L. 142, 46 A. 570. It would have been premature for these plaintiffs to have initiated any action based upon the Bar Association allegations, at least until after entry of the nolle prosequi on September 25, 1941 for the very reasons set forth in the Apgar case.

Similarly the non-lawyer plaintiffs, claiming injury to their employment, alleged that the cloud which overhung them by way of indictment flowing from acts of the defendants was not disspelled until the indictments were nolle prossed on September 25, 1941. The principles of the Apgar case similarly affected them and they could not have maintained action for injury to their employment until the actions initiated by the indictments were terminated. In their cases, too, this time did not begin to run for the statute of limitations until September 25, 1941. Therefore the statute of limitations does not bar this action, as urged by the defendants, against any of the plaintiffs.

Incidentally, the plaintiffs argue in their brief, in avoidance of the bar of the statute of limitations, that the plaintiff, French, Jr., was in military service and that this would preclude operation of the statute as against him. It is nowhere pleaded nor properly brought before the court. It is not necessary to stress this point, however, in view of the denial of defendants' motion based on the statute of limitations.

 Failing elimination of counts of the complaint, on grounds heretofore set forth, the defendants in paragraph 4(a) of their motion seek to strike out certain paragraphs of Count 1 of the complaint as follows:

### (1) Paragraph 6.

They object to the following language in paragraph 6: "and thus to interfere with the administration of justice in the Courts of New Jersey and the United States by denying the plaintiffs in such actions judgments for damages to which they were, or would be entitled under the system of justice in such courts as provided by the law of the land, and in particular, to deny the plaintiffs, in the civil actions mentioned in the indictments hereinafter set forth, judgments to which they were so entitled."

And "with intent to defeat and deny the constitutional and legal rights of Samuel T. French and his clients".

We do not agree with plaintiffs' contention that the above language is descriptive of method, etc., but find it immaterial and irrelevant. The motion in this respect is granted.

### (2) Paragraph 7(a).

Defendants object to this entire paragraph, or in the alternative, to that part of the above paragraph which charges that they "caused New Jersey Claim Investigation to have a corporate shell and act as a shield for the defendants, and caused the officers and directors of the New Jersey Claim Investigation to be 'dummies' for the said defendants and the voluntary associations, aforesaid, of which they were members and the Insurance Committee appointed by the said defendants and the said voluntary associations", and to the word "wicked" as used in paragraph 7(a).

The language used by the pleader can perhaps be characterized as lurid, but it is on the whole descriptive of the actions in which the plaintiffs allege the defendants engaged. The motion to strike the paragraph or the specified parts thereof will be denied.

### (3) Paragraph 7(b).

This paragraph is objected to in its entirety, or in the alternative, defendants object to the following language: "which said conduct of the said New Jersey Claim Investigation, its officers, employees, committees, attorneys and agents, was criminal and in violation of the law".

The motion to strike the whole paragraph will be denied, but the above quoted language will be stricken since it pleads an immaterial and irrelevant conclusion.

### (4) Paragraph 7(c).

The defendants move to strike the entire paragraph. It will be denied for the reason that it simply sets forth in detail the allegations contained in the preceding paragraph 7(b).

### (5) Paragraph 7(d).

The defendants object to the entire paragraph and move that if it is not wholly striken that the following parts of it should be stricken: "illegally intimidate, falsely arrest, confine and interrogate witnesses, including plaintiffs herein, to vari-

ous suits instituted by Samuel T. French by aggregating the functions of the Prosecutor of the Pleas of Camden County," "to illegally take said witnesses from their homes and beds," "under false color of authority, process and right," "to illegally afford said Hargraves free and easy access to said witnesses and to interrogate them while they were confined in the County Jail".

There is substantial allegation of fact contained in this paragraph to insulate the language from the objections raised by the defendants that the paragraph contains mere characterizations of the pleader and the motion to strike this paragraph or the quoted parts thereof will be denied.

### (6) Paragraph 7(e).

The defendants by an amendment to paragraph 4 of their motion to strike included this entire paragraph. The motion will be denied for grounds similarly stated in connection with 7(d) immediately preceding.

### (7) Paragraph 7(f).

The defendants move to strike the entire paragraph or in the alternative the following language therefrom: "commit the crime of embracery", "by other sinister means and by unfair and fraudulent practices, arts and contrivances" and "all in violation of the laws of New Jersey".

The motion to strike the paragraph in full will be denied for the reason that in the main it sets out and describes the method by which the plaintiffs claimed the defendants activated themselves to the ultimate injury of the plaintiffs. The first quoted excerpt, however, "commit the crime of embracery" and the last quoted excerpt "all in violation of the laws of New Jersey" will be stricken as being irrelevant and immaterial conclusions. The remaining quoted excerpt "by other sinister means and by unfair and fraudulent practices, arts and contrivances" is vague, but not to the point where it must be stricken, for it lends itself to application by the defendants of pre-trial discovery proceedings which if they disclose the allegations to be meaningless may render the language susceptible of being stricken on a later motion.

### (8) Paragraph 8.

The defendants move to strike the following excerpt from this paragraph "including the said embracery of the Grand Jury in and for the County of Camden for the April Term 1938".

As heretofore ruled the language objected to here will be stricken on the ground that it is an irrelevant and immaterial conclusion.

### (9) Paragraph 9.

The defendants move to strike the words "rogues gallery" as descriptive of photographs mentioned in this paragraph.

The paragraph alleges ample factual detail to justify the use of the descriptive words "rogues gallery" and the motion will be denied.

The defendants also move to strike the words "illegal means" from this paragraph. However, while of a conclusory nature the word "illegal" here is descriptive of the means whereby the photographs were obtained and as such may stand. The motion to strike the word "illegal" will be denied.

### (10) Paragraph 18.

The same objection is made by the defendants with regard to the use of the words "rogues gallery" in connection with photographs as in paragraph 9, and the same ruling will be made.

In paragraph 4(b) of their motion the defendants move to strike that portion of 7(g) as alleged in the first and second counts in favor of French, Sr. and French, Jr., respectively, reading as follows: "and to injure the other plaintiffs herein and the other persons named in said indictments in their said business, and to bring them into infamy and disgrace with their neighbors and other citizens of the State of New Jersey and elsewhere, as well as their employers, and to destroy them as witnesses in the then pending actions at law hereinafter mentioned".

Since the first and second counts are for the benefit of only French, Sr. and French, Jr., respectively, the reference to the other plaintiffs is irrelevant and immaterial. The defendants' motion to strike the quoted language will be granted as it affects the

first and second counts mentioned, preserving the language in the third to eighth counts as it affects plaintiffs other than French, Sr. and French, Jr., and as it is incorporated therein by reference.

The defendants similarly moved to strike that portion of the paragraph as incorporated by reference in the third through eighth counts in favor of the other plaintiffs which reads "the plaintiffs, Samuel T. French and Samuel T. French, Jr., in their profession, they being practicing lawyers in the State of New Jersey, and to bring them into infamy and disgrace with and among their clients, the judges of the courts, their fellow practitioners, their neighbors and other citizens of the State of New Jersey".

This language obviously relates to the claims of French, Sr. and French, Jr., and it is immaterial and irrelevant in so far as the claims of the other plaintiffs in counts three to eight are concerned and the defendants' motion to strike the language as incorporated by reference in counts three to eight will therefore be granted.

In paragraph 4(c) of the motion the defendants move to strike "With reference to the Second through Eighth Counts, the following paragraphs or parts of paragraphs of The First Count incorporated by reference: Paragraphs 4, 5, 6, 7(b) and 7(f) inclusive, Paragraph 9, the parts of Paragraphs 11, 12, 17 and 18 which read 'in pursuance of said scheme and conspiracy set forth in paragraph 6 of this Count', and, except as to the Second Count, that part of Paragraph 18 which reads 'and the charges filed with the Ethics Committee of the Camden County Bar Association' because they are irrelevant and immaterial."

The allegations in paragraphs 4 and 5 of Count 1, with reference to the association of French, Sr. with the practice of law is stricken in so far as the second through the eighth counts are concerned since these allegations are immaterial to the causes of action of the plaintiffs other than French, Sr., and to this extent the motion of the defendants to strike will be granted.

The motion to strike paragraph 6 of Count 1 will be denied except in so far as it has been concluded herein to strike any portion of it. In the main this paragraph sets up the alleged activities of the defendants as they are charged to have affected the plaintiffs to their injury.

Similarly the motion to strike paragraphs 7(b) through 7(f) and parts of paragraphs 11, 12 and 17 of Count 1 except as it has been concluded heretofore to strike portions thereof, will be denied.

With regard to the motion to strike parts of paragraph 18 of Count 1 the motion is also denied except as it is directed to that portion relating to the charges filed with the Ethics Committee. That portion will be stricken except as it relates to French, Sr. and French, Jr.

In paragraph 4(d) of their motion the defendants seek to strike "With reference to the Ninth and Eleventh Counts, that part of Paragraph 2 of the Ninth Count which reads 'and to injure the other plaintiffs herein and the other persons named in said indictment in their said business, and to bring them into infamy and disgrace with their neighbors and other citizens of the State of New Jersey and elsewhere, as well as their employers, and to destroy them as witnesses in the then pending actions of law hereinafter mentioned', and, with reference to the Thirteenth through Eighteenth Counts, that part of Paragraph 2 of the Ninth Count which reads 'the plaintiff Samuel T. French and Samuel T. French, Jr., in their profession, they being practicing lawyers in the State of New Jersey, and to bring them into infamy and disgrace with and among their clients, neighbors and other citizens of the State of New Jersey' because they are irrelevant and immaterial."

This motion to strike is similar to that in paragraph 4(b) of defendants' motion with reference to paragraph 7(g) of Count 1 as incorporated by reference in the second through eighth counts and it is granted for reasons similar to those expressed in the conclusion on paragraph 4(b) of their motion.

In paragraph 4(e) of the motion the defendants seek to strike as to the thirteenth through eighteenth counts that portion of

paragraph 7 of the Ninth Count which reads " 'and the plaintiffs, Samuel T. French and Samuel T. French, Jr., have been so damaged in their profession,—the said Samuel T. French as a practicing attorney and counsellor at law of the State of New Jersey and the said Samuel T. French, Jr. as a practicing attorney of the State of New Jersey,—that they have lost and been deprived of much of the law practice built up by them during the course of their practice of their profession, and they have been damaged in their good reputation as citizens and good practicing lawyers amongst their clients, judges of the court, fellow practitioners and neighbors and citizens generally, and suffered the loss of profits in their profession, to their great damage,' because it is irrelevant and immaterial."

The motion is similar to that made in paragraphs 4(b) and 4(d) of defendants' motion and will also be granted.

Defendants also seek to strike paragraph 3 of the thirteenth through eighteenth counts which incorporates by reference the whole of paragraph 18 of the first count relating to damages with the exception of the reference therein as to special damages to French, Sr. and French, Jr. Each of these counts incorporates by reference paragraph 7 of the ninth count which relates to damages and adopts practically verbatim the allegations of paragraph eighteen. Therefore each count contains two conclusions relating to damages almost identical in form. Paragraph 3 of Counts 3 to 18 is redundant in that it incorporates paragraph 18 of the first count and therefore the motion to strike it from the thirteenth through eighteenth counts will be granted.

■ The defendants have further insisted that the objectionable allegations set forth in paragraph 4 of their motion should be granted because of the danger of submitting highly prejudicial matter to the jury. They reasoned that they contain broad characterizations by the pleaders obviously intended to impress upon the jury the magnitude and wickedness of the conspiracy charged against the defendants and to incline it to be unfavorable to the defendants' cause. They assert that although the complaint itself may not be submitted to the jury, its contents may be divulged on opening statement or otherwise. In view of the fact that pre-trial conferences are mandatory with this court, the issues accordingly will be subject to narrowing therein. The court also has adequate control over the opening statements by counsel and may admonish the jury against becoming influenced by elements other than factual proofs and the legitimate inferences that may be drawn therefrom.

■ In paragraph 5 of their motion the defendants have sought a bill of particulars. Their motion, when originally filed, was controlled by the rules in effect prior to the 1948 amendments. They argued accordingly that the motion should be decided in accordance with the rule as it existed prior to the effective date of the amendments. However, this is an immaterial issue since the amendments abolishing bills of particulars merely restated the general rule previously existent as followed by the majority of federal courts that the defendants are entitled only to such information as will permit an answer to the complaint since the function of the bill of particulars was not to serve in lieu of the discovery procedures for which the Federal Rules adequately provided. See 10 Federal Rules Service, Amendments, p. xcix, wherein amended Rule 12(e) is discussed.

No useful purpose is served in setting forth the approximately 25 inquiries propounded by the defendants for further particularization. Each has been scrutinized and in no instance is it found that the information sought is essential to permit the defendants to answer the complaint. The complaint herein states sufficient facts and will permit a responsive pleading by the defendants. Whatever else they desire in the way of information may be readily secured through the procedures outlined in Rules 26 to 35, inclusive, of the Federal Rules of Civil Procedure, 28 U.S.C.A. This motion is accordingly denied.

Paragraph 6 of the motion seeks to set time limits upon delivery by the plaintiffs of particulars sought through paragraph

5 of the motion and it falls with the decision not to grant the motion for particulars.

In paragraph 7 of the motion, the defendants seek to extend the time in which they may answer. The defendants shall have thirty days in which to answer, the time to run from service upon each of their attorneys of a copy of the order which shall be presented by plaintiffs based upon the conclusions contained in this opinion.