## DAVID HAWTHORNE v. CATHARINE McCLURE.

**1. Same Rule Applies to Relations by Affinity as by Blood.**

A step-daughter residing with her step-father, as a member of his family, can not recover for services rendered by her for him, in the absence of proof of an express promise to pay therefor, or of facts and circumstances from which such promise may be fairly inferred.

**2. Promise to Pay not Implied From Statements.**

Statements that the step-daughter should be well paid, and provided for in his will, made by the step-father to a third person, but not communicated to her, will not warrant the inference of an express promise to pay for the services.

ERROR to the Court of Common Pleas of Darke county.

Defendant in error brought suit in the court below to recover of the plaintiff in error, an imbecile, the sum of $1,235, for services performed by her for him, as his hired servant, at his special instance and request.

The answer of the guardian of the plaintiff in error denies the allegations of the petition, and avers that many years ago the defendant's mother intermarried with the plaintiff, and that the defendant had been for a long time a member of the plaintiff's family, and resided therein, and that any services by her rendered were for the benefit of herself, her mother, and the family generally, under an agreement between the parties that no charge should be made therefor; and that she remained in said family upon the condition that she should perform ordinary household duties in assisting her mother, without charge. That during this time she received her board, clothing, nursing, medical attendance, and all other necessaries from him, as a member of his family, and accepted the same in full satisfaction of her services.

The reply denies specifically the averments of the answer.

The verdict was for the plaintiff below; whereupon a motion for a new trial was made and overruled, to which the defendant excepted, and a bill of exceptions containing all the evidence is part of the record.

Alread & Bickel, for plaintiff in error, cited: 5 Kans., 419, 421; 2 Denio, 149; 5 Barb., 122 (step-child); 3 N. Y., 312 (same); Express promise necessary to enable a visitor to recover; 28 Ia., 548; also 3 Grant's Cas., 271; 13 N. J. Eq., 151; 52 Ia., 44; 42 Mich., 49; 28 Kans., 675; Wright, 89—134; 99 Pa. St., 552; 71 *Id.*, 161; 9 *Id.*, 260; *Id.*, 309; 22 N. J. L., 409, 416, 424; 37 Mich., 68; 29 Wis., 278, 286; 34 Pa. St., 480.

Meeker & Bowman, for defendant in error, cited:   Exr. of Pollock v. Pollock, 1 Ohio Circ. Dec., 410 (S. C. 2 C. C. R., 143); 66 Barb., 507; 28 Ia., 551; 2 Parsons Contracts, 47; 17 Vt., 556; 30 N. J. Eq., 564; 52 Ia., 45; 26 Ind., 207; 28 Ind., 89; 13 N. J. Eq., 151; 105 Ill., 508; 65 Ill., 106; 6 Johns., 199, 201; 15 Pick., 131; 28 N. Y., 594; Miller v. Brown, 33 O. S., 552.

SHEARER, J.

The assignment of error relied upon in this case is that the verdict is not sustained by sufficient evidence.

It is well settled in Ohio that a child, residing with his father as a member of his family, is not entitled to recover for work and labor performed or services rendered, in the absence of an express agreement to pay therefor, or its equivalent. Wright, 89 and 134; 2, Pollock v. Pollock, *ante.*

The evidence shows that the mother of the plaintiff below became the wife of the defendant below more than twenty years ago, at which time the plaintiff below, then over thirty years of age, became a member of her step-father's family, and continued to reside therein until ten or twelve years before the commencement of the original action, when she married. She lived with her husband about six months; then left him and returned to her step-father, on her own motion—certainly, so far as the record shows, not at the solicitation or request of the latter, —and thenceforward, until the death of her step-father, resided in his family as a member thereof. She assisted her mother in the household duties, worked in the fields occasionally, cared for the stock, did dairy work, and performed other services. She sold the farm products, received the proceeds, and seems to have had the general management of the domestic affairs of the family. When her step-father was ill, she assisted in taking care of him, and, at times, performed very disagreeable duties made necessary by the nature of his malady. But in this she was aided by other relatives, the children and grand-children of Hawthorne, who remained with him during the two serious illnesses mentioned by the witnesses.

While she performed these services, she had the benefit of a home, and her

board and clothing, and was treated as a member of the family, and not as a servant. Her services were voluntary, and not in pursuance of any authority exercised over her. They were beneficial to her step-father, but at the same time she enjoyed the corresponding benefit of a home and a support, which must be deemed full compensation, in the absence of proof of a promise by the step-father to pay her therefor.

That the parties were related by affinity does not alter the rule. "The relation of step-parent and step-child existing between persons living together in the same household creates a strong presumption that no payment or compensation was intended to be made for services rendered by one to the other beyond that received at the time they were rendered. A person claiming pay for such services in such a case, must overcome this presumption by direct or circumstantial proof, which is clear and satisfactory, that the relation between the parties was not merely the relation of parent and child, but was that of debtor and creditor, or master and servant. Some arrangement or contract to that effect must be shown." Hall v. Finch, 29 Wis., 278.

In this case there is no evidence of a prior request for these services on the part of Hawthorne; nor any promise by him to pay therefor. He said to Mr. Goslee that he "didn't know how he could get along without Katy; that she was a great help to him, and she should be well paid for her trouble and work; that he intended to make a will and provide for her." Mrs. Hawthorne testified that she understood plaintiff "was to be paid for her services," and Mrs. Goslee heard Hawthorne say that plaintiff "should be well paid."

These are the only expressions of Hawthorne upon the subject. It does not appear that the defendant in error was present on any of these occasions, nor that the statements of her step-father were communicated to her. Nor is there any evidence tending to show an expectation of compensation upon her part, or that payment was contemplated by either party.

The evidence disclosed by the record is insufficient in any view to warrant the finding that there was a contract for the payment of the defendant in error for her services.

The cases relied upon by counsel for the defendant in error are not at variance with these views; for there, in nearly every instance, the services were rendered in pursuance of the request of the party sought to be charged, thus raising an implied promise to pay therefor. Such is not this case.

No express promise to pay having been shown, nor facts from which the same could be fairly inferred, it follows that the verdict is not sustained by sufficient evidence. The judgment will therefore be reversed and the cause remanded to the court below for a new trial.