Strong & Sons v. Mundy.

WOODBRIDGE STRONG & SONS

v.

EZRA F. MUNDY.

1. In order to justify the exercise of the summary jurisdiction which a court possesses over the attorneys or solicitors practicing before it, their conduct must be dishonest, oppressive or clearly illegal.

2. The statute regulating fees (*Rev. p. 399*) does not control the charges which attorneys, solicitors and counsel may make against their clients, nor do sections 79 and 113 of the Chancery act. *Rev. p. 125 & 1274.*

3. Attorneys and solicitors may lawfully charge their clients reasonable fees for services rendered, without an express contract for a specific sum.

On appeal from an order advised by Vice-Chancellor Pitney, whose opinion is reported in *Mundy v. Schantz, 7 Dick. Ch. Rep. 744.*

*Mr. Alan H. Strong,* for the appellants.

*Mr. Charles H. Voorhis,* for the respondent.

The opinion of the court was delivered by

DIXON, J.

In August, 1893, one of the executors of Benajah Mundy employed Woodbridge Strong & Sons, solicitors in chancery, to foreclose a mortgage upon lands in Middlesex county. The solicitors made the requisite searches, instituted the suit and carried it on to completion, resulting in a sale of the premises to a second mortgagee for $2,306.41. This amount being paid to the solicitors, they retained the taxed costs and the further sum of $150, which they claimed as a collection fee and for their services in the matter not embraced in the taxed costs. Thereupon, another of the executors filed a petition in the suit, praying that the chancellor would order the solicitors to pay over to

him said sum of $150, on the ground that they had no right to more than the taxed costs. Such an order having been made, the solicitors appeal to this court.

Attorneys and solicitors are officers of the court, and there is no doubt of the authority of the court to proceed summarily against them for their misconduct. But the behavior which will justify the exercise of this summary jurisdiction must be such as is dishonest or oppressive or clearly illegal. If it appear that there exists between a lawyer and his client a fair dispute, which can be decided only on the settlement of doubtful questions of fact or law, the court should not exercise its summary power, but should leave the parties to their ordinary remedies. *Balsbaugh* v. *Frazer, 19 Pa. St. 95; In re Kennedy, 120 Pa. St. 497; In re Paschal, 10 Wall. 483; Burns* v. *Allen, 15 R. I. 32; Drapers' Co.* v. *Davis, 2 Atk. 295; In re Blake, 3 El. & E. 34.*

In the present case, nothing dishonest or oppressive is suggested, but the petition is based upon the idea that the charge is clearly illegal, because the statute regulating fees, together with sections 79 and 113 of the Chancery act, limits the charges which a solicitor may make against his client in a foreclosure suit, or, at least, no greater charge can be made without an express contract for a specific sum.

As to the statute regulating fees, we think the better opinion is that, with respect to attorneys, solicitors and counsel, who are at liberty to decline an employment to render the services there specified, it merely fixes the costs which can be taxed between party and party. *Adams* v. *Stevens, 26 Wend. 451; Foster* v. *Jack, 4 Watts 334; In re Paschal, 10 Wall. 483.* If this view had not prevailed in New Jersey, the various cases in which our courts have held that solicitors, attorneys and counselors might recover, by suit against their clients, greater compensation than the fee-bill awards, must have been otherwise decided, for the statute prohibits even the reception, for the services therein mentioned, of more than the fees thereto respectively annexed. *Rev. p. 339* § 2. I think it is within the experience of every member of the bar, that it has not been deemed

illegal to receive from clients, for such services, fees in excess of those prescribed by the statute.

The distinction between costs taxable between party and party, and those taxable or allowable between attorney and client, is referred to in every text-book on English practice. The former are called costs *de incremento*, or costs of increase, and had their origin in the statute of Gloucester (*6 Edw. I.*), while the office of attorney did not come into legal existence until a later date, under the statute of Westminster II. (*13 Edw. I.*) The taxation of charges by attorneys against their clients was regulated in England by several acts, the latest of which, before our Revolution, was *2 Geo. II. c. 23 § 23.*

The same distinction appears, I think, in our Practice act, sections 8, 9 and 10 dealing with costs of increase—those accruing on any suit, a bill of which must be filed with the clerk before execution issues—and section 12, which borrows its language from *2 Geo. II. c. 23 § 23*, requiring an attorney or solicitor to serve a taxed bill of his fees, charges and disbursements upon his client before he can maintain a suit for the same. The "fees, charges and disbursements," in section 12, cannot be limited to the "costs" mentioned in the previous sections.

Section 79 of the Chancery act was evidently not intended to control charges between solicitor and client, for it expressly provides for taxation only "in favor of any party" to the action. It is, moreover, confined to the expenses incurred for searching the title of the mortgaged premises, and hence does not apply to other services.

Nor does section 113 of the Chancery act affect the case before us, for it merely enables the chancellor to allow for counsel such fee as he may deem just, "instead of the retaining fee now allowed to counsel by statute." As the retaining fee allowed by statute did not determine the charge which a counselor might make against his client, this fee allowed by the chancellor *instead of* the statutory fee cannot have that effect.

We find no statute which controls the matter.

Strong & Sons v. Mundy.

With regard to the necessity of an express contract for a specific sum, that applies only to counsel fees for advocacy. *Schomp* v. *Schenck, 11 Vr. 198; Hopper* v. *Ludlam, 12 Vr. 182; Woodruff* v. *Zabriskie, 19 Vr. 610.* The claim of an attorney or solicitor is to be determined by its reasonableness, which in English practice might always be settled by taxation, at the instance of either party on notice to the other (*Anderson* v. *May, 2 B. & P. 237; 1 Arch. Prac. 104*), and with us must be so settled, under section 12 of the Practice act, in case a suit is necessary for its recovery, but in other cases is left without statutory regulation.

We must therefore consider whether the charge made by the appellants was so unreasonable as to be clearly illegal.

It is admitted that in the progress of the foreclosure they rendered various services for which the statutory fee-bill makes no allowance, so that if this bill were treated as a standard of reasonableness so far as it goes, some further compensation would be legitimate. It is also proved that during a quarter of a century there has been in vogue, among the lawyers in New Brunswick (where the appellants and the executor who employed them reside), a schedule of fees, which would, if assented to by the client, clearly support the charge made. Whether that schedule was assented to, is a matter for inference only as the evidence now stands. But neither in the petition nor by testimony, nor on the argument, did the petitioner set up that the charge was exorbitant in amount, his sole contention being that no charge could legally be made.

Under these circumstances, we think the case is not one calling for the interposition of the summary power of the court.

Let the order appealed from be reversed, and the petition be dismissed.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SIMS, SMITH—12.

*For affirmance*—None.