PAUL SCHNEIDER, PLAINTIFF-APPELLANT, v. JOHN H. MUELLER, DEFENDANT-RESPONDENT.

Argued May 16, 1944—Decided September 14, 1944.

For the plaintiff-appellant, *Thomas J. Kennedy*.

For the defendant-respondent, *Aaron Heller*.

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The plaintiff appeals from a judgment of nonsuit. The complaint charged the defendant with malicious prosecution. In our review of the testimony in the case we note that in the several discussions between plaintiff's counsel and the trial court the cause of action is sometimes referred to as a malicious abuse of process and at other times as a case of malicious prosecution. There is, of course, a wide disparity between these two causes of action and the differentiation has been pointed out in Mr. Justice Perskie's lucid opinion for this court in the case of *Ash* v. *Cohn,* 119 *N. J. L.* 54.

The plaintiff's action for damages is alleged to have arisen out of an action brought in the Court of Chancery against the plaintiff by the defendant in this law action, in which an injunction, temporary in character, was allowed.

It is not charged in this case that the processes of the Court of Chancery were used for a purpose not justified by the law, *i. e.,* for an illicit and perverted purpose, which is the gist of abuse of process, but rather that the defendant instituted

an action for injunctive relief, &c., in the Court of Chancery, maliciously and without probable cause, and this is the gist of malicious prosecution.

The factual background may be briefly stated thus: In April, 1937, Paul Schneider and John H. Mueller decided to form a corporation, each investing the sum of $10,000 and each subscribing for fifty shares of the capital stock of the company formed. Mr. Schneider was the company's president, Mr. Mueller its treasurer and the wife of Mr. Mueller, to whom one share of stock was allotted, its secretary. Their purpose was the manufacture of hosiery, &c. Plaintiff seems to have been skilled in the erection, maintenance and operation of machinery used to produce hosiery and defendant seems not to have been experienced along these lines. The former was to receive $90 a week, the latter $35 a week from the income of the business. This compensation arrangement was later modified along different lines, which has no bearing on the matter before us. Things did not go very well; financial difficulties ensued; there was disagreement between the parties; and as a result the defendant offered to take a loss of $1,000 in his investment and relinquish his interest in the business. The plaintiff endeavored to get someone to take up the defendant's proposal and went to a Mr. Hoffman whose firm had installed the machinery which the hosiery company used. Plaintiff says that he returned to the plant that night, January 10th, 1938, and found himself locked out. His key to the building was useless because a safety catch was set on the inside of the door. A watchman inside the plant refused to admit him so the plaintiff broke a window and opened the door himself. His associate, Mr. Mueller, appeared on the scene. A dispute between the two resulted in calling the police. The following day the parties met in the company's office in the presence of the company's attorney. After some discussion the attorney advised Mr. Schneider that it would be better if he stayed away from the plant until things were straightened out in court. He further suggested that Mr. Schneider get legal advice. Schneider, with the help of an employee, endeavored to take his tools out of the plant. Mueller objected because a tool or a machine

part was included, whereupon Schneider told the employee to return everything to the plant to avoid argument. Thereupon Mueller put a watchman of his own in the plant and Schnieder did likewise. Shortly thereafter, Mueller having filed a bill in the Court of Chancery, a restraining order, issued out of that court, was served on Schneider, whereby he was enjoined from interfering with the business of the company, from entering the plant and from taking away any of the company's machinery or tools until the court's further order. The temporary injunction was dated January 13th, 1938, and provided that Schneider show cause on January 31st, 1938, why the restraint should not be made permanent. There was a further provision that Schneider might move to modify the restraint upon five days' notice. No action was taken by Mr. Schneider until August 23d, 1938, at which time notice of motion to vacate the restraining order and to dismiss the bill was served, the stated reasons for the latter being that Mueller was not entitled to equitable relief and that no subpœna had been issued. The result of all this was that on August 29th, 1938, by consent of the parties, the restraining order which had been in force and effect from January 13th of that year was vacated and the bill dismissed, the parties stipulating neither side was to have costs. The plaintiff testified that upon receipt of the restraining order he consulted counsel. Within two or three days he went to another job in the State of Mississippi where he remained until July 4th of that year. From his own testimony it is manifest that no action was taken by the plaintiff looking to the dissolution of the restraint from the day it was served on January 13th, 1938, until August 29th of the same year, and that for six months of the interval he was not in the state. Essentially, the basis of plaintiff's action for malicious prosecution is that the charges of the bill of complaint—that he attempted "to create damage in the plant" * * *, to take machines or tools other than his own, to cause a breach and forfeiture of a contract which the corporation enjoyed * * * to interfere with the business of the corporation * * * to advise workers not to appear in the plant * * *," &c.— were untrue and in his direct testimony he denied cate-

gorically the truth of these charges. On his cross-examination it appeared that at the time he had the dispute with Mueller in January, or after the restraining order was served, he entered into a contract with the Hoffman Machinery Company to work for it in Mississippi and that prior to leaving he received a notice of a meeting of the board of directors of his own corporation which he did not attend. He says he refrained from attending because of the injunctive order, but there is nothing in the order itself which prevented his attending a directors' meeting.

On April 22d, 1940, the corporation (Eagle Rock Hosiery Mills, Inc.) was declared insolvent and a receiver appointed to liquidate its assets.

The grounds of appeal are that it was error to have directed a judgment of nonsuit, and this is the main question. Two other grounds of appeal are argued—(a) that the court erred in refusing to admit in evidence a contract between the corporation and one Rose Christoph, and (b) that the court erred in sustaining objection to a question asked of the plaintiff by his counsel on direct examination. The ruling of the court in each instance was correct. The matter of the contract between the corporation and the other contracting party had no materiality whatever to the issue in the case and the overruled question was directed to what the plaintiff spoke about to the defendant after the vacation of the restraint on August 29th, 1938. That this conversation was very remote in point of time is obvious. Further, what the plaintiff said to the defendant months after the accrual of his alleged cause of action had no relevancy to what had previously transpired. Now as to the question of the judgment of nonsuit; in an action for malicious prosecution our law is settled that such action cannot be maintained for prosecuting a civil suit in a court of common law having competent jurisdiction by the party himself in interest unless the defendant in that suit has, upon such prosecution, been arrested without cause and deprived of his liberty or *made to suffer other special grievance different from and superadded to the ordinary expense of his defense.* See *Potts* v. *Imlay,* 4 *N. J. L.* 382; *Bitz* v. *Meyer,* 40 *Id.* 252.

It is the fact that elsewhere in the courts of other states that are entitled to great respect the rule is otherwise. But our cases have not departed from the rule just stated. The rule, of course, is otherwise where the claim is that a criminal charge was fabricated maliciously and without probable cause. But in a civil case, as here, where the defendant went into the Court of Chancery making claim in his own behalf against Schneider, he may proceed according to law if he believes he has a·cause of action, however erroneous he may be in that belief. *Bitz* v. *Meyer, supra.*

At the time the restraining order was dissolved on August 29th, 1938, the merits of the controversy between the parties were not litigated. The answering affidavits, if any were filed, do not appear in the state of case. All that does appear is a consent order providing for the vacation of the restraint and a dismissal of the bill without costs. Nor does there appear to have been any claim of "special grievance" different from and superadded to the ordinary expense of a defense. There was a restraint which was subject to challenge on five days' notice by the express provision of the restraining order itself, but the plaintiff in this case took no steps to challenge the bill or dissolve the restraint. Instead, by conduct, he acquiesced since he left the state to take other employment and took no steps to disturb the *status quo* for seven months thereafter. It is charged in the complaint that because of the "malicious and groundless' acts" of the defendant the plaintiff lost his entire investment but there is no proof that the plaintiff's investment loss was caused by the action which the defendant instituted in the Court of Chancery.

We perceive no merit in the appeal and the judgment of nonsuit is therefore affirmed.

*For affirmance*—The Chancellor, Chief Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Colie, Dear, Wells, Rafferty, Hague, Thompson, Dill, JJ. 16.

*For reversal*—None.