HOWARD LIONEL TOFT, PLAINTIFF-APPELLANT, v. MARY
G. KETCHUM, DEFENDANT-RESPONDENT.

Argued March 7, 1955—Decided May 2, 1955.

*Mr. Martin Kimmel* argued the cause for the appellant (*Mr. J. Chester Massinger*, attorney).

*Mr. Oliver R. Kovacs* argued the cause for the respondent (*Messrs. Clausen, Klein & Kovacs*, attorneys; *Mr. Walter Waverczak*, of counsel).

The opinion of the court was delivered by

VANDERBILT, C. J.   This appeal involves a determination as to whether the defendant may be liable to the plaintiff, an attorney-at-law, for malicious prosecution.

On September 24, 1953 the defendant filed a complaint in accordance with *R. R.* 1:16–4 with the Monmouth County Ethics and Grievance Committee, charging the plaintiff with improper conduct.   A copy of the complaint was served upon the plaintiff, who in due course filed his answer.   The committee conducted hearings on four different days in November, 1953, at which witnesses on both sides were examined and cross-examined pursuant to *R. R.* 1:16–4(*g*) as a result of which the committee filed a presentment with this court charging the plaintiff with unethical and unprofessional conduct.   On due consideration of the presentment and the supporting testimony we issued an order to show cause why

the plaintiff should not be disbarred or otherwise disciplined. After studying the briefs and hearing oral argument on the return of the order to show cause, we discharged the order to show cause for the reason that it appeared that the plaintiff herein was not acting as an attorney-at-law when the alleged unethical conduct took place, but rather that he was engaged in business operations as a real estate broker and the complaint should have been made to the New Jersey Real Estate Commission, *N. J. S. A.* 45:15–17, rather than to an ethics and grievance committee of this court. We did not attempt to pass upon the conduct of the plaintiff as a real estate broker nor on the question of the jurisdiction of this court under the Constitution with respect to the actions of an attorney-at-law in business matters not directly related to the practice of law. In subsequent cases, *In re Genser*, 15 *N. J.* 600, 606 (1954), *In re Carlsen*, 17 *N. J.* 338, 346 (1955), however, we have taken jurisdiction over matters involving unethical conduct of attorneys-at-law in non-legal matters and if the disciplinary case involving the plaintiff herein had come before us subsequent to these decisions we would have gone into the merits of the charge.

On August 26, 1954 the plaintiff instituted this action in the Superior Court for malicious prosecution, claiming that the complaint filed by the defendant with the Monmouth County Ethics and Grievance Committee was false and without reasonable or probable cause, and that as a result thereof his professional reputation suffered and he was forced to expend money in his defense. The defendant moved to dismiss the complaint on the ground that it failed to set forth a cause of action and her motion was granted by the trial court. The plaintiff appealed and we certified the appeal on our own motion prior to oral argument in the Appellate Division of the Superior Court.

The defendant claims that the dismissal of the complaint should be upheld because an action for malicious prosecution cannot be predicated upon the institution of a proceeding before other than a judicial tribunal. We cannot agree with this general statement of law, because we incline

on principle toward the weight of authority in this country, which supports the view that under certain circumstances a malicious prosecution may be predicated upon the institution of other than a judicial action, at least where such proceedings are adjudicatory in nature and may adversely affect legally protected interests, *National Surety Co. v. Page*, 58 *F. 2d* 145 (4 *Cir.* 1932); *Melvin v. Pence*, 76 *U. S. App. D. C.* 154, 130 *F. 2d* 423, 143 *A. L. R.* 149 (*Ct. App. D. C.* 1942); *Rivers v. Dixie Broadcasting Corp.*, 88 *Ga. App.* 131, 76 *S. E. 2d* 229 (*Ct. App.* 1953); 3 *Restatement of Law of Torts, sec.* 680; notes 11 *Geo. Wash. L. Rev.* 118 (1942), 41 *Mich. L. Rev.* 549 (1942); 34 *Am. Jur., Malicious Prosecution, sec.* 19.1; see also *Saum v. Proudfit*, 122 *N. J. L.* 96 (*Sup. Ct.* 1939); *Stein v. Schmitz*, 21 *N. J. Misc.* 218 (*Sup. Ct.* 1943), affirmed 137 *N. J. L.* 725 (*E. & A.* 1948). Moreover, the filing of a complaint with one of our ethics and grievance committees is in effect a filing with the Supreme Court, in which alone the power to discipline attorneys at law in New Jersey resides, *Const., Art.* VI, *Sec.* II, *par.* 3. The several county ethics and grievance committees established under our rules of court, *R. R.* 1:16–1 *et seq.*, are arms of the court which perform the very important functions of receiving complaints, investigating them, holding hearings on them, and then presenting their findings to the court. The Supreme Court, however, has at all times full control over the proceedings and regardless of the conclusion of the committee a full report must be submitted to the court, *R. R.* 1:16–4(*h*), which, although giving due weight to the findings and conclusions of the committee, has the sole responsibility of deciding whether the attorney in question should be disciplined. From the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee.

The basic question before us is whether public policy requires that the filing of a complaint with an ethics and grievance committee be privileged. In dealing with this issue we are confronted by two conflicting considerations of policy. On the one hand, there is the injury that may be

suffered by any attorney as a result of the institution of disciplinary proceedings against him on what turns out to be improper or groundless charges. Even if the charges against him are found to be baseless and the complaint is dismissed, he still may suffer from the public knowledge of these proceedings which may damage his reputation and injure his ability in the future to earn a living. Consideration of the interests of the attorney led our former Supreme Court to uphold an action similar to that involved here in *Stein v. Schmitz*, 21 *N. J. Misc.* 218 (1943), but on appeal the Court of Errors and Appeals expressly reserved decision on this point, 137 *N. J. L.* 725 (1948).

On the other hand, however, it is in the public interest to encourage those who have knowledge of any unethical conduct of attorneys to present such information to the appropriate county ethics and grievance committee so that this court may carry out its constitutional disciplinary duties. Disciplinary proceedings against members of the bar are *sui generis*. In *In re Ries*, 131 *N. J. L.* 559, 562 (*Sup. Ct.* 1944), the true function of the disciplinary proceeding is described:

"But the proceeding is not criminal in nature. It is an exercise of the summary disciplinary jurisdiction of this court over attorneys and counselors, as officers of the court. *Strong & Sons v. Mundy*, 52 *N. J. Eq.* 833. It is civil in character, or, perhaps, it is more accurate to say it is *sui generis*, for it partakes, essentially, of an inquiry to determine whether the delinquent practitioner is unworthy of the trust and confidence which attend the relationship of attorney and client. This is necessarily the basic consideration. The object of disciplinary proceedings is not alone to punish the attorney guilty of malpractice; the primary purposes are to compel the attorney to deal fairly and honestly with his client, and to determine whether he has, by his conduct, proved himself unfit to be entrusted with the duties and responsibilities of the office of attorney. *In re Lentz*, 65 *N. J. L.* 134. If it is thereby evident that there is such deficiency of character as disqualifies him for the confidence and trust inherent in the office, the public interest requires that he be ousted; and this wholly apart from any consideration of punishment."

In *In re Chernoff*, 344 *Pa.* 527, 26 *A.* 2d 335, 339 (*Sup. Ct.* 1942), the court repeated well established principles that

" 'The suspension or disbarment of an attorney is, like his admission, a judicial act, based upon due inquiry into his fitness for the office' " and that " 'The purpose of disbarment is not the punishment of the attorney, but the maintenance of the purity of the Bar. Disbarment is for the purpose of preserving the courts of justice from the official ministrations of persons unfit to practice in them.' " In carrying out its constitutional power and duty to discipline attorneys the Supreme Court requires the assistance of both the bar and the public. It is only through the cooperation of those with knowledge of unethical conduct on the part of attorneys that the court is made aware of such conduct as requires action on its part. It is thus in the public interest to encourage those who have such information to forward it to the court through the filing of complaints with the county ethics and grievance committees, free from any threats of or danger of a possible malicious prosecution suit against the complainant by the accused attorney or his friends.

██ In attempting to do justice as between these two conflicting interests, we are necessarily forced to give great weight to the fact that we have been charged by the Constitution with the solemn duty of ridding the bar of those who are unfit to practice our profession. As we have seen, this is fundamentally a duty to the public and it is necessary that we make every effort to do this job to the best of our ability. If each person who files a complaint with the ethics and grievance committee may be subject to a malicious prosecution action by the accused attorney there is no question but that the effect in many instances would be the suppression of legitimate charges against attorneys who have been guilty of unethical conduct, a result clearly not in the public interest. And although to deprive an attorney of his right to recover damages in a civil action for the malicious filing of such a complaint without probable cause occasionally works a hardship upon the attorney (this is the first instance under the new Constitution and even this might not have arisen had it come before us after our recent decisions in *In re Genser,* 15 *N. J.* 600, 606, *supra,* and *In re Carlsen,* 17 *N. J.*

338, 346, *supra*), we are of the opinion that this result must follow if we are to properly carry out our constitutional duty to maintain the high standards in our bar. We therefore find that the filing of a complaint with an ethics and grievance committee is privileged and that an attorney cannot predicate a malicious prosecution action or similar suit upon it. In reaching this determination we have in mind that this court has at all times the inherent power to punish for contempt those who may file baseless complaints or falsely testify or otherwise attempt to hinder the due process of justice and we should not hesitate to use this power if the circumstances warrant it to protect the interest of an aggrieved member of the bar.

Affirmed.

JACOBS, J. (concurring). Our law looks with some disfavor upon actions in the nature of malicious prosecution and places upon the plaintiff the responsibility of proving not only lack of probable cause but also actual malice and special injury. See *Mayflower Industries v. Thor Corp.*, 15 *N. J. Super.* 139, 151 (*Ch. Div.* 1951), affirmed 9 *N. J.* 605 (1952). But our law does not wholly prohibit such actions and the interests of justice do not suggest that it should. To the contrary, Dean Prosser, in his discussion of actions for the wrongful institution of civil proceedings, has pointed out that "there is no policy in favor of vexatious suits known to be groundless, which are a real and often a serious injury; and the heavy burden of proof upon the plaintiff, to establish both lack of probable cause and an improper purpose, should afford sufficient protection to the *bona fide* litigant and adequate safeguard against a series of actions." *Prosser, Torts*, 886 (1941).

The Monmouth County Ethics and Grievance Committee conducted extensive hearings during which the plaintiff and his counsel participated. The witnesses against the plaintiff, as well as the plaintiff and his witnesses, were examined and cross-examined fully and detailed factual findings, amply supported by the evidence, were made by the committee. It

determined, without any dissenting voice, that the plaintiff was "guilty of unethical and unprofessional conduct." Although this court ultimately dismissed the proceeding because it found that the plaintiff was acting as real estate broker rather than attorney, it at no time suggested disagreement with the committee's findings relating to the morally offensive nature of his conduct. In the light of these particular circumstances it would grossly disserve the interests of justice to permit the plaintiff to relitigate the factual issues determined by the committee, for the purpose of establishing the essential elements, particularly the lack of probable cause, of an action in the nature of malicious prosecution. Probable cause for the institution of a civil suit has been defined as "the presence of reasonable ground for belief that the cause of action exists supported by circumstances sufficient to warrant an ordinarily prudent man in the belief that it exists." *Mayflower Industries v. Thor Corp., supra,* 15 *N. J. Super.,* at *page* 153. And the Restatement indicates that a judgment favorable to the person who initiated the original suit is generally conclusive of probable cause even though subsequently reversed on appeal. *Restatement, Torts,* § 675, *comment* (*b*), § 680, *comment* (*b*), (1938). Decisions lending support are found in *Prosser, supra,* at 878, where the author notes that a conviction after trial, even though it is subsequently reversed, obviously presents strong evidence and is usually held to be conclusive as to the existence of probable cause. See Note, *Probable Cause in Actions for Malicious Prosecution,* 3 *Ark. L. Rev.* 445, 449 (1949).

The majority's affirmance of the lower court's dismissal does not, however, rest on the ground that, under the very compelling circumstances presented, the plaintiff is in no just position to show lack of probable cause. Instead, it announces the far-reaching doctrine that ethics proceedings are absolutely privileged and that an attorney has no individual redress no matter how patently false and malicious is the charge against him or how grossly hurtful is the wrong committed against him. No supporting decisions are cited; indeed, the decisions which are cited all lend persuasive

support to the contrary view. In *Stein v. Schmitz*, 21 *N. J. Misc.* 218 (*Sup. Ct.* 1943), affirmed 137 *N. J. L.* 725 (*E. & A.* 1948), Judge Wolber stated with manifest fairness that "the attorney is protected, like any other person, against a wrong, predicated upon actual malice"; that persons engaged in other professions or occupations would justly receive protection against malicious proceedings seems to be unchallenged.

In *Saum v. Proudfit*, 122 *N. J. L.* 96 (*Sup. Ct.* 1939), the former Supreme Court seemingly recognized that an action in the nature of malicious prosecution could be rested upon a false complaint filed against a real estate broker with the Real Estate Commission; it found, however, that there was no showing of special injury. Similar recognition is found in *Melvin v. Pence*, 76 *U. S. App. D. C.* 154, 130 *F. 2d* 423, 143 *A. L. R.* 149 (*Ct. App. D. C.* 1942), where Justice Rutledge dealt with an action in the nature of malicious prosecution based on a proceeding instituted against a licensed detective before the licensing authorities of the District of Columbia, and in *National Surety Co. v. Page*, 58 *F. 2d* 145, 148 (4 *Cir.*, 1932) where the court dealt with an action based on a proceeding to revoke the license of an insurance agent. In the *Page* case Circuit Judge Parker pointed out that such a proceeding against an insurance agent is calculated to injure his reputation and affect his business; that it should be instituted not for the benefit of an individual but for the protection of the public; and that if it is instituted maliciously and without probable cause there is "no reason why the party injured thereby should not have redress in an action in damages just as he would in the case of a groundless criminal prosecution." See also *Prosser, supra,* at 887; 143 *A. L. R.* 157 (1943); 6 *U. Det. L. J.* 101 (1943); 41 *Mich. L. Rev.* 549 (1942).

In his treatment of the English authorities Sir John Salmond states that actions for malicious prosecution or in the nature thereof may be maintained not only on the basis of wrongful criminal proceedings but also on the basis of unwarranted bankruptcy or liquidation proceedings or cer-

tain other civil proceedings involving special grievance. He raises the specific question as to whether an action in the nature of malicious prosecution may be maintained "at the suit of a solicitor whom the defendant has maliciously endeavored to have struck off the roll"; and he makes the pertinent observation that "If malicious proceedings in bankruptcy are, as we have seen, a good cause of action, there seems to be no reason why a similar conclusion should not be drawn with respect to the proceedings mentioned." *Salmond, Torts* (11th ed. 1953), 739.

Attorneys-at-law have aptly been described as professional men who follow a common calling in a spirit of public service and nonetheless so because they thereby earn their livelihood. Throughout our country's history they have been in the forefront in promoting the public welfare and much is owed them for their ever continuing leadership in defense of democratic institutions. They play a vital part in our judicial system which displays such high solicitude for civil liberties and individual rights and, while they are periodically subject as a class to false attacks, they readily withstand them by adherence to their dedicated task of furthering the interests of justice. But when these attacks become irresponsibly malicious and individualized they wrongfully place in jeopardy the reputation and very livelihood of the particular practitioner involved; and while the individual attorney is entitled to no greater judicial protection under these circumstances than the law affords to those who follow other professions and occupations, he is, in all justice, entitled to no less. The contrary holding, that those who devote so much of their lives towards attaining equal protection under law for others should be denied it for themselves, seems ironic indeed.

The notion that the granting of protection to the individual attorney might impair the public interest by discouraging disclosures of misconduct, seems to have little substance. It must be remembered that the action in the nature of malicious prosecution would be maintainable only upon an affirmative showing that the ethics complaint was

actually malicious, lacked probable cause and resulted in special injury; it would not be maintainable where the complaining party, though mistaken, acted with that elemental honesty of purpose and belief which may rightly be expected of all complainants. It is difficult to believe that recognition of the action as thus limited would discourage any ethics complaints which ought justly be made. See *Winfield, Torts* (*6th ed.* 1954), 747, where Sir Percy Winfield soundly pointed out that the action for malicious prosecution developed gradually, for it had to make its way between two competing principles—the freedom of action that every man should have in bringing violators to justice and the necessity for checking "lying accusations of innocent people"; that for some time judges "oscillated between apprehension of scaring off a just accuser and fear of encouraging a false one"; but that the action was long ago put on a firm basis and "is so much hedged about with restrictions and the burden of proof upon the plaintiff is so heavy that no honest prosecutor is ever likely to be deterred by it from doing his duty."

While I would affirm the lower court's judgment of dismissal, I would do so on the ground that in the instant matter the plaintiff is in no just position to show lack of probable cause for the ethics proceeding.

WACHENFELD, J. (dissenting). I am in accord with the majority's holding in so far as it indicates an action for malicious prosecution will lie for the institution, maliciously and without probable cause, of disciplinary proceedings against an attorney. There is much authority to support this conclusion. Originally, actions for malicious prosecution could be based only upon the wrongful institution of a criminal action, but as early as 1816 the former Supreme Court extended the rule, holding that such an action was maintainable if based upon the wrongful prosecution of a civil suit if the defendant in that suit was "arrested without cause and deprived of his liberty, or made to suffer other special grievance different from, and superadded to the ordinary expense of a defense." *Potts v. Imlay,* 4 *N. J. L.* 377,

382, 386 (*Sup. Ct.* 1816); *Bitz v. Meyer*, 40 *N. J. L.* 252, 254 (*Sup. Ct.* 1878); *Schneider v. Mueller*, 132 *N. J. L.* 163, 166 (*E. & A.* 1944); *Mayflower Industries v. Thor Corp.*, 15 *N. J. Super.* 139, 151 (*Ch. Div.* 1951), affirmed 9 *N. J.* 605 (1952). See the authorities cited in Justice Jacobs' concurring opinion.

An attorney, perhaps more than any one else, may suffer serious injury when false and malicious accusations of unprofessional conduct are lodged against him in the form of a complaint before a grievance committee.

However, I cannot join the majority when it concludes that the public interest underlying the duty and functions of this court in disciplinary matters involving members of the legal profession makes it necessary to deny relief to an attorney for the wrong which he has suffered—relief which would ordinarily be available to any other member of the community in like circumstances.

In support of this conclusion, the majority holds that to sustain the instant complaint would deter citizens from bringing charges of unprofessional conduct against attorneys, and in the interest of maintaining high standards and qualifications for membership in the bar, we must permit unfettered resort to grievance committees even by those who willfully, maliciously and falsely make a complaint.

But we are concerned in the instant case with a complaint which alleges the defendant filed a false charge against the plaintiff, without reasonable or probable cause, and that she did so "maliciously and with a design of forcing plaintiff to accede to the unconscionable demands of the defendant." At this stage of the proceedings, we are, of course, obliged to accept the allegations of the complaint as true, and the fact that the grievance committee, before whom the charges were made, subsequently filed a presentment against plaintiff with this court should not automatically deprive him of his day in court on his complaint.

I cannot understand how the filing of a knowingly false and malicious charge against an attorney before a grievance committee to advance private interests can be said to aid

us in fulfilling our constitutional duty to maintain the high standards of the bar or to advance the public interest. To confer blanket immunity in such a situation will, in my opinion, have precisely the opposite effect. Those who have legitimate grievances against attorneys need no cloak of immunity as an inducement to file complaints with grievance committees. Granting immunity will only serve to encourage the use of disciplinary proceedings as privileged sanctuaries to carry on personal vendettas and excursions of ill will disassociated from the true facts in a cause. It will weaken, rather than strengthen, the disciplinary process and will make a mockery of equity and justice.

I would reverse the judgment entered below and remand the cause for trial on the issues alleged in the complaint.

BURLING, J. (dissenting). I am in accord with the philosophy expressed by Mr. Justice Jacobs in his concurring opinion with respect to the existence of the plaintiff's substantive right of action for malicious prosecution.

The complaint in the present case was attacked by motion before an answer was filed. The complaint alleged that the charge made against the plaintiff by the defendant in the disciplinary proceedings was "false and without reasonable or probable cause." Summary judgment on the merits was not sought by the defendant. There were no affidavits filed relating to the alleged falsity of the charges made by the defendant herein on the disciplinary proceedings taken in respect to the plaintiff herein. See *R. R.* 4:58-3. The sole issue determined on the motion was a question of law, whether the complaint stated a claim on which relief could be granted.

The defendant's motion also attacked the sufficiency of the allegations of the complaint concerning the alleged falsity of the charges levied at the plaintiff herein in the disciplinary proceedings. It seems to me the allegations of falsity should be amplified. *Cf. R. R.* 4:8-1; 4:8-5; 4:9-1; 4:12-5.

For the reasons expressed in this dissenting opinion I would reverse the judgment of the Superior Court, Law Di-

vision, and remand the matter to the Superior Court, Law Division, for reinstatement of the complaint and for further proceedings in accordance with the pertinent Rules of practice and procedure and applicable substantive law.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, JACOBS and BRENNAN—5.

*For reversal*—Justices WACHENFELD and BURLING—2.