William E. BUFALINO, Plaintiff,

v.

Stephen A. TELLER, Defendant.

Civ. A. No. 7716.

United States District Court
M. D. Pennsylvania.

Oct. 24, 1962.

William E. Bufalino, in pro. per.

John H. Hibbard, Wilkes-Barre, Pa., Laurence H. Eldredge, Philadelphia, Pa., for defendant Stephen A. Teller.

FOLLMER, District Judge.

Plaintiff, William E. Bufalino, has filed a Complaint setting forth "that the defendant, Stephen A. Teller, is sued for damages and injuries to the plaintiff through the processes of libel and slander, as will hereinafter more fully appear." Plaintiff sets forth that he "is an attorney and counsellor-at-law" and, inter alia, admitted to practice before "the Supreme Court of the Commonwealth of Pennsylvania" and "the Courts of Luzerne County, Pennsylvania"; that he "filed an application for admission to the Bar of the State of Michigan on or about the 25th day of April, 1961." In connection therewith, plaintiff filed with the National Conference of Bar Examiners an "Application for Character Report"[1] which contained the statements, inter alia, as follows:

"I, William Eugene Bufalino, hereby apply for a character report to be filed with Board of Law Examiners in the State of Michigan in connection with my application for admission to practice law in the state of Michigan. It is my intention to comply with all requirements for admission to practice law in the state of Michigan so that I may be considered for admission as of 15 May 1961.

\* \* \* \* \* \*

"I understand that I will be notified by the National Conference of Bar Examiners when the report is filed with the proper authority in this state, and that said report shall be strictly confidential to the examining authority.

\* \* \* \* \* \*

"I, William Eugene Bufalino, hereby apply for a character report in connection with my application for admission to practice law in the State of Michigan. I understand that I will not receive and am not entitled to a copy of the report nor to know its contents. I agree to give any further information which may be required in reference to my past record and consent to having this investigation made and such information as may be received reported to the admitting authority."

The defendant, an attorney and the District Attorney of Luzerne County, Pennsylvania, having been contacted in the course of such investigation dictated

1. The "Application for Character Report" was not set forth in the Complaint, but at the time of argument a photostatic copy was placed on the record as Defendant's Exhibit No. 1 and conceded by plaintiff to be a correct copy of the "Application for Character Report" referred to in the Complaint.

a letter and "mailed it, or caused it to be mailed" to the "then Director of the National Conference of Bar Examiners". Plaintiff alleges that the Director "lateralled the false and libelous statements of and concerning the plaintiff by writing and publishing same to the Michigan authorities delegated and empowered to pass upon the qualifications of applicants for admission to the Bar of the State of Michigan", or as stated elsewhere in the Complaint, "the National Conference of Bar Examiners, on or about the 8th day of September, 1961, filed with the Michigan State Board of Law Examiners the character reports requested by the plaintiff."

The only allegation as to what constitutes the asserted libelous matter is in Paragraph 10 of the Complaint, namely,

"10. That the letter referred to in this cause of action contains, among other defamatory and libelous matter, a statement to the effect that, 'The connection between the Bufalino family and the Mafia is strong,' or words to that effect; that it contains also a statement to the effect that the plaintiff's family and the plaintiff have racketeering and Mafia connections; and that, upon information and belief, the letter referred to made other degrading statements concerning the plaintiff affecting him in his profession."

The defendant has filed a Motion to Dismiss, a Motion for More Definite Statement, and a Motion to Strike.

Defendant contends that under the facts in this case he was absolutely privileged to send the letter concerning plaintiff to the National Conference of Bar Examiners.

The importance of obtaining, unhampered, full information concerning an applicant for admission to the Bar is well stated in an annotation in 64 A.L.R.2d 301 entitled "Good Moral Character as requisite for admission to bar" in which there is quoted (page 306) the Supreme Court of Wisconsin that,

" 'The importance or necessity of the requirement of a high moral character for honesty and integrity required of candidates for admission to the bar was well expressed in Re Law Examination of 1926 (1926) 191 Wis. 359, 210 N.W. 710: "It can also be truthfully said that there exists nowhere greater temptations to deviate from the straight and narrow path than in the multiplicity of circumstances that arise in the practice of the profession. For these reasons the wisdom of requiring an applicant for admission to the bar to possess a high moral standard therefore becomes clearly apparent, and the board of bar examiners, as an arm of the court, is required to cause a minute examination to be made of the moral standard of each candidate for admission to practice * * *" The court further said: "It needs no further argument, therefore, to arrive at the conclusion that the highest degree of scrutiny must be exercised as to the moral character of a candidate who presents himself for admission to the bar. * * *" ' "

The basic necessity for freedom from the danger of a libel action in a situation such as here involved is manifest in Canon 29 of the Canons of Professional Ethics which provides:

"29. Upholding the Honor of the Profession.

"Lawyers should expose without fear or favor before the proper tribunals corrupt or dishonest conduct in the profession, and should accept without hesitation employment against a member of the Bar who has wronged his client. * * * The lawyer should aid in guarding the Bar against the admission to the profession of candidates unfit or unqualified because deficient in either moral character or education. He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice."

In Wilson v. Whitacre, 2 Ohio Cir. Dec. 392, 395 (1889), the plaintiff's action in libel against the defendant was predicated upon the fact that the defendant, a member of the Bar, had voluntarily and of his own motion sent a letter to the court concerning the plaintiff, who was an applicant for admission, and the court holding that defendant was protected by an absolute privilege, pointed out that "It is certainly a matter of great importance to the welfare of society, that unworthy men should not be allowed to become members of the bar", and that it is "the duty of every lawyer at least * * * who has knowledge of facts that would render the admission of an applicant improper, to call the attention of the court to the subject that due investigation might be had."

In Ramsted v. Morgan (1959), 219 Or. 383, 347 P.2d 594, 77 A.L.R.2d 481, 486, a libel action was based upon a letter which the defendant (a client of the plaintiff) had sent to the Grievance Committee of the local Bar Association complaining of the plaintiff's conduct as his attorney. The Oregon Supreme Court in holding such communication absolutely privileged said:

"The absolute privilege to publish defamatory matter under the circumstances to which the privilege applies is based upon the ground that 'there are certain relations of life in which it is so important that the persons engaged in them should be able to speak freely that the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly, and in order that their duties may be carried on freely and without fear of any action being brought against them, it says: "We will treat as absolutely privileged any statement made in the performance of these duties." ' "

The Court in pointing out that "The rule of absolute privilege is applicable not only to judicial proceedings but to quasi-judicial proceedings as well" stated: "The proceedings may be regarded as quasi-judicial in character in spite of the fact that the body before whom the proceedings are conducted is not the creature of the legislature."

Likewise, in Toft v. Ketchum (1955) 18 N.J. 280, 113 A.2d 671, 52 A.L.R.2d 1208, in an action for malicious prosecution, Chief Justice Vanderbilt said:

"* * * we are necessarily forced to give great weight to the fact that we have been charged by Constitution with the solemn duty of ridding the bar of those who are unfit to practice our profession. As we have seen, this is fundamentally a duty to the public and it is necessary that we make every effort to do this job to the best of our ability. If each person who files a complaint with the ethics and grievance committee may be subject to a malicious prosecution action by the accused attorney there is no question but that the effect in many instances would be the suppression of legitimate charges against attorneys who have been guilty of unethical conduct, a result clearly not in the public interest. And although to deprive an attorney of his right to recover damages in a civil action for the malicious filing of such a complaint without probable cause occasionally works a hardship upon the attorney * * * we are of the opinion that this result must follow if we are to properly carry out our constitutional duty to maintain the high standards in our bar. We therefore find that the filing of a complaint with an ethics and grievance committee is privileged and that an attorney cannot predicate a malicious prosecution action or similar suit upon it."

Of much greater significance, importance and applicability is the Doctrine of Absolute Privilege in a situation such as here involved. The plaintiff, himself, in connection with an application to the Board of Law Examiners requested the National Conference of Bar Examiners to obtain and furnish a character report

to the Board of Law Examiners and specifically agreed that such report be "strictly confidential to the examining authority" and that he understood that he would not receive and was not entitled to a copy of the report nor to know its contents. He further consented to "having this investigation made and such information as may be received reported to the admitting authority."[2] The defendant, an attorney, complied with the request for information in this investigation. To place an attorney in the position that he would be subject to a libel action if he gave any information which was not laudatory of applicant would render such inquiry nugatory.

 Plaintiff has referred to many cases dealing with matters divulged to the public press. Such cases of course have no bearing whatsoever on the present problem. Likewise, he claims the right to show motivation, a contention which under the doctrine of absolute privilege is without merit. It is succinctly answered by Justice Cohen in Montgomery v. Philadelphia, 392 Pa. 178, 180, 140 A.2d 100 (1958) in Footnote 1 as follows: "If the defendant officials were acting within the scope of their authority and were by virtue of their position entitled to absolute privilege, the fact that their statements were made also for their own personal motives would be immaterial as would be the presence of malice or want of reasonable or probable cause." The fact that there may have been a dictation of the letter to a stenographer in Pennsylvania would not be material, Restatement–Torts, § 604, Comment b. We need not decide whether the law of Pennsylvania or Colorado, where the National Conference of Bar Examiners is located, should be applied, since nothing has been submitted which would cause this Court to believe that the law of Pennsylvania would not fully sustain the defense of absolute privilege under the present facts [3] and no decisions of the Colorado courts have been found which would justify any

contrary conclusion as to the law of Colorado.

It was the defendant's duty as an attorney and as the District Attorney of Luzerne County, Pennsylvania, to respond to the request of the National Conference of Bar Examiners for information to be supplied to the Board of Law Examiners. Freedom of action in that regard must not be restricted by the danger or fear of the possible harassment and expense and inevitable hazards of vindictive or ill-founded damage suits.

An Order will be entered granting the Motion to Dismiss.

In view of the granting of the Motion to Dismiss, the remaining motions for more definite statement and to strike become moot.

---

2. This in itself would create an absolute privilege, Restatement—Torts, § 583.

3. See for example, Montgomery v. Philadelphia, supra.