**Inna S. SHESTUL, Plaintiff,**

v.

**Erica MOESER, and National Conference of Bar Examiners, Defendants.**

**No. CIV.A. 2:04CV492.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 15, 2004.

Inna S. Shestul, Norfolk, VA, Pro se Plaintiff.

Joseph Edward Hartman, Esquire, Robert A. Burgoyne, Esquire, Fulbright & Jaworski LLP, Washington, DC, for Defendants.

## *OPINION AND DISMISSAL ORDER*

REBECCA BEACH SMITH, District Judge.

This case comes before the court on a Motion to Dismiss filed by defendants. For the reasons stated below, the motion is GRANTED.

### I. Factual and Procedural History

Plaintiff, proceeding pro se, filed this lawsuit on August 16, 2004, alleging defamation based on letters sent to the California Committee of Bar Examiners and the Virginia Board of Bar Examiners stating that plaintiff engaged in improper conduct during an exam. Federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff is a resident of Norfolk, Virginia; defendant Erica Moeser is a resident of Madison, Wisconsin, and defendant National Conference of Bar Examiners is headquartered and has its principal place of business in Madison, Wisconsin.

Defendants filed this motion to dismiss pursuant to Federal Rules of Civil Procedure 10(b), 12(b)(2), and 12(b)(6), on September 20, 2004. On the same date, defendants filed and served on plaintiff a notice pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), and Local Rule 7(K), explaining plaintiff's right to respond to defendants' motion and the consequences of failing to file a response. Plaintiff filed a memorandum in opposition to the motion to dismiss on October 5, 2004. Defendants replied on October 15, 2004. The motion is now ripe for review.

According to plaintiff's complaint, she took the Multistate Professional Responsibility Examination ("MPRE") in San Francisco, California, in November 2002. The MPRE is a standardized test typically taken in the last year of law school; most jurisdictions require applicants to pass the MPRE before they can be admitted to the bar. Defendant National Conference of Bar Examiners ("NCBE") contracts out administration of the MPRE to an entity known as ACT. Plaintiff received a letter in December 2002 from defendant Erica Moeser ("Moeser"), President of NCBE, stating that plaintiff's MPRE score was on hold due to suspicions of cheating. According to Moeser, during administration of the exam, a proctor noticed plaintiff looking at the answer sheet of the person seated next to her. In January 2003, plaintiff received another letter from Moeser stating that plaintiff's test score would be invalidated because NCBE's investigation revealed statistical evidence that she had cheated on the exam.[1] The letter further stated that NCBE would notify the California Committee of Bar Examiners that plaintiff engaged in improper conduct during the exam, and that ACT would be directed to similarly inform any other jurisdictions to which plaintiff directed that her score be sent. A copy of the January 17 letter was then sent directly to Jerome Braun at the California Committee of Bar Examiners.

Plaintiff claims that she was seeking admission to the California and Virginia Bars. Because of the January 17 letter sent to the California Committee of Bar Examiners, plaintiff claims she was denied admission to that state's bar on May 5, 2004. Plaintiff claims she was also denied admission to the Virginia bar because of a letter sent by ACT to the Virginia Board of Bar Examiners in April 2004.[2] This letter, however, was not written by Moeser or NCBE, although plaintiff rests part of her claim on it. Plaintiff claims that Moeser defamed her by writing and send-

---

1. The January 17, 2003, letter to plaintiff states that plaintiff's answer sheet and the answer sheet of the person seated next to her were referred to "an outside analyst who is a recognized expert in the field of answer copying." The analyst determined that there was "strong statistical evidence of answer copy-ing" based on a comparison between plaintiff's answer sheet and her neighbor's.

2. This letter, dated April 8, 2004, is attached as an exhibit to plaintiff's Response to Defendants' Motion to Dismiss.

ing the January 17, 2003, letter. Plaintiff also sues NCBE under a theory of respondeat superior.

## II. Analysis

Defendants' motion to dismiss is based on three separate grounds: (1) that this court does not have personal jurisdiction over defendant Moeser; (2) that under Rule 12(b)(6), plaintiff fails to state a claim on which relief can be granted; and (3) that plaintiff's complaint fails to comply with the requirements of Rule 10(b). Because the first two issues are dispositive, the court does not reach the third.

### A. Personal Jurisdiction

■ This court does not have personal jurisdiction over defendant Moeser. Ms. Moeser is a resident of Madison, Wisconsin. She has done nothing to subject her to suit in Virginia under its long-arm statute, Va.Code § 8.01–328.1. Although plaintiff is correct that Virginia is a "single-act state," requiring only one tortious act to be committed for a court to exert personal jurisdiction over a party, defendant Moeser has not committed any torts in Virginia. The letter sent to the Virginia Board of Bar Examiners was written by ACT, not Moeser. Furthermore, although NCBE clearly conducts business within Virginia, this contact cannot be imputed to Moeser simply because she is an employee of NCBE. *See D'Addario v. Geller,* 264 F.Supp.2d 367, 380–81 (E.D.Va.2003) ("A corporate agent is not subject to personal jurisdiction in his individual capacity under the long-arm statute solely based upon his status as a corporate officer or agent."). Therefore, because Moeser is an out-of-state defendant and has done nothing under the long-arm statute to subject her to jurisdiction in Virginia, plaintiff's claim against Moeser is dismissed.

**3.** Defendants' reliance on *Semida v. Rice,* 863 F.2d 1156 (4th Cir.1988), is inapt; that case

### B. Failure to State a Claim under Rule 12(b)(6)

#### 1. Statute of Limitations

■ Defendants claim that plaintiff's lawsuit was not timely filed and thus should be dismissed pursuant to Rule 12(b)(6). Plaintiff claims that California's statute of limitations should apply to the January 2003 letter sent to the California Committee of Bar Examiners. However, because Virginia is the forum state of this lawsuit, Virginia's conflict of law rules apply. Under Virginia law, "questions concerning statutes of limitations are deemed to be procedural and as such are controlled by the law of the forum." *Barry v. Donnelly,* 781 F.2d 1040, 1041 (4th Cir.1986). Therefore, Virginia's statute of limitations applies to each defamation claim in this lawsuit, regardless of what state's substantive law would apply. Under Virginia law, the statute of limitations for defamation is one year. Va.Code § 8.01–247.1 (2000).

The allegedly defamatory letters were mailed in January 2003 and April 2004. The complaint was filed August 18, 2004, which is more than a year after the first letter was written on January 17, 2003. The second letter, however, was dated April 8, 2004. Plaintiff's claim with respect to this letter is thus not time-barred.

■ Defendants rely on the "single publication rule" to argue that plaintiff's claims with respect to both letters are time-barred because the second letter is not a new act of defamation which restarts the limitations period. The single publication rule "permits only one cause of action to be maintained for any single publication, even if heard or read by two or more third persons." *Katz v. Odin, Feldman & Pittleman, P.C.,* 332 F.Supp.2d 909 (E.D.Va. 2004). Because there are two letters at issue here, written by two different people, the single publication rule does not apply.[3]

involved one defamatory letter being sent out

Therefore, plaintiff may maintain a separate cause of action for each letter. The first, however, is time-barred, leaving only the April 8, 2004, letter as actionable.

There are, however, several other problems with plaintiff's defamation claim based on the April 2004 letter, one of which being that it was written by an employee of ACT rather than by either defendant.[4] However, since the issue of absolute privilege (which has been briefed by both parties) is dispositive in any event, the court will restrict its discussion to that issue.

### 2. Absolute Privilege

■ Defendants claim that the alleged defamation is subject to an absolute privilege because it was directed toward state boards of bar examiners, which are quasi-judicial bodies. It is well-established that statements made to judicial or quasi-judicial bodies are subject to an absolute privilege. See, e.g., Rockwood Bank v. Gaia, 170 F.3d 833 (8th Cir.1999); Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704 (7th Cir.1994); Smith v. McDonald, 895 F.2d 147 (4th Cir.1990). Statements subject to an absolute privilege cannot serve as the basis for a defamation suit. See Shabazz v. PYA Monarch, LLC, 271 F.Supp.2d 797, 803–06 (E.D.Va.2003).

Other courts that have addressed this issue have held that information submitted to a board of bar examiners is subject to an absolute privilege. Dugas v. City of Harahan, 978 F.2d 193, 197–99 (5th Cir. 1992); Kalish v. Ill. Educ. Ass'n, 157 Ill. App.3d 969, 110 Ill.Dec. 72, 510 N.E.2d 1103, 1108–09 (1987). In Dugas, the Fifth Circuit held that statements made by a bar applicant's former employer to the Florida Board of Bar Examiners were subject to an absolute privilege and could not support a defamation action. The court held that the Florida Board of Bar Examiners was an "arm of the court" by its exercise of exclusive jurisdiction over the admissions of persons to the practice of law, and that Florida has a "compelling state interest in ensuring that only those fit to practice law are admitted to its Bar." Dugas, 978 F.2d at 197. Accordingly, the court held, an absolute privilege should be extended to those communications in order to ensure the honesty and openness of people and entities providing information to bar committees regarding an applicant's fitness for admission.

Similarly, the Illinois Court of Appeals held in Kalish that the Character and Fitness Committee of the Illinois Supreme Court was a quasi-judicial body and thus any statements made to the committee were protected by an absolute privilege. Other courts have also extended an absolute privilege to complaints or statements made to state bar committees in connection with a member or applicant. See Bufalino v. Teller, 209 F.Supp. 866, 868–70 (M.D.Pa.1962) (holding that an absolute privilege attached to statements made in a

---

twice to different audiences. The Fourth Circuit held that the letter had not been "republished" when a copy of the original was sent to a third party. In this case, there are two distinct letters written by different people; the single publication rule does not apply to such a situation.

4. As discussed briefly above, ACT administers the MPRE on behalf of NCBE. The court has no further information about the relationship between ACT and NCBE. Plaintiff does not argue that ACT is an agent of NCBE or Moeser; in fact, neither party has addressed this issue at all. The court would be entitled, based on the information before it, to dismiss this case based on the fact that ACT, the author of the April letter (which is the only one not barred by the statute of limitations), is not a party to the action. However, the court declines to rest its decision on this basis as the issue of absolute privilege has been fully briefed and applies no matter who is the author of the defamatory letter.

letter sent to NCBE which NCBE forwarded to the Michigan Board of Bar Examiners in connection with an application to the Michigan bar); *Elsass v. Tabler*, 131 Ohio App.3d 66, 721 N.E.2d 503, 505–07 (1999) (holding that statements made in a letter to the Office of Disciplinary Counsel of the Supreme Court of Ohio were absolutely privileged); *In re Moore*, 186 B.R. 962, 976–77 (Bkrtcy.N.D.Cal.1995) (holding that, under California law, a complaint to the state bar is absolutely privileged); *Weaver v. Grafio*, 595 A.2d 983, 988–89 (D.C.App.1991) (holding that statements made in a letter to the D.C. Board of Professional Responsibility and the D.C. Bar Ethics Committee were absolutely privileged).

 It is generally accepted that the Virginia Board of Bar Examiners performs a judicial function on behalf of the Supreme Court of Virginia. *See Woodard v. Virginia Bd. of Bar Examiners*, 454 F.Supp. 4, 6 (E.D.Va.1978), *aff'd*, 598 F.2d 1345 (4th Cir.1979). Therefore, an absolute privilege should attach to any statements made to the Board of Bar Examiners in connection with an applicant to the Virginia bar. Although there seem to be no Virginia cases on point, the court agrees with other jurisdictions that have afforded such a privilege to these communications. It is certainly in the interest of any state's bar licensure committee to have full information regarding the applicants before them.[5]

As the court finds both letters subject to an absolute privilege, they may not stand as the basis of a defamation suit. Therefore, the remaining argument made by defendants, based on Rule 10(b), need not be addressed. For the aforementioned

reasons, plaintiff's suit is hereby DISMISSED.

Plaintiff may appeal this Dismissal Order within thirty (30) days of the date it is entered by filing a notice of appeal with the Clerk, United States District Court for the Eastern District of Virginia, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is DIRECTED to send a copy of this Opinion and Dismissal Order to plaintiff and counsel for defendants.

**IT IS SO ORDERED.**

---

**5.** Of course, plaintiff contends that the allegations of improper conduct during the exam are untrue. This is a claim best brought before the bar committees to which she is applying. Based on plaintiff's complaint, it appears that the California and Virginia bar committees both denied her application without affording her any further process; however, such a denial of process is not at issue in this case.